COVINGTON, Judge.
Plaintiffs, Amy E. Dillon and Arthur H. Dillon, sued defendant hospital, Hospital Affiliates of Baton Rouge, d/b/a Doctors’ Memorial Hospital, for negligence and breach of contract arising out of the same factual circumstances occurring on October 16, 1974. Suit was filed on September 8, 1978. The negligence action was dismissed on exception of prescription. Plaintiffs tried the breach of contract action to a jury on November 24, 1980. At the close of the plaintiffs’ case, the trial court directed verdict in favor of the defendant hospital, and signed a judgment in favor of defendant, dismissing the plaintiffs’ suit with prejudice *494 at their costs. It is from this judgment that plaintiffs appeal. We reverse and remand.
The record reflects that plaintiffs instituted a suit against the Hospital for an alleged injury resulting from a fall occurring on October 16,1974; and that suit was filed on September 8, 1978, some three years and eleven months after the date of the alleged injury. The trial court initially sustained the peremptory exception of prescription as to the entire cause of action; but upon application for rehearing, the court reversed its ruling in part, holding that plaintiffs had alleged a cause of action in contract which had not prescribed, and maintained the plea of prescription insofar as the negligence action was concerned.[1]
Paragraphs XII and XIII of the plaintiffs’ petition alleged that defendant “breached its contract, both express and implied, and that implicit with the payment for hospital care to plaintiff (Amy E. Dillon) in that plaintiff was entitled to a supervised hospitalization and recuperative period with adequate and skilled attendants”; and that “these services would be in accordance with her physician’s orders and advice that the hospital was safe for the intended care.” Further, they alleged that defendant “breached its contract of holding out itself as a licensed hospital, fully aware and knowledgeable of the standards of care of its profession by the aforementioned facts.”
In paragraphs VII and VIII, plaintiffs alleged that on the evening of October 16, 1974, she requested a bedpan by way of intercom and after waiting 30 minutes without response, she left her bed to go to the bathroom adjacent to her bed; and that upon returning, she fell to the floor, striking her face and chest, causing great pain. It is alleged that thereafter a nurse came to assist, and that the nurse grabbed her right arm in attempting to pull Mrs. Dillon up. It is then alleged that she advised the nurse about the nature of her operation (double mastectomy); whereupon the nurse dropped her to the floor, again striking her chest. Plaintiffs further alleged that the nurse grabbed Mrs. Dillon’s left arm in another attempt to help her up from the floor; and that when the nurse was told that this was no better, she was again dropped to the floor.
Upon the close of the case for the plaintiffs, defendant move for a directed verdict under LSA-C.C.P. art. 1810, based upon the plaintiffs’ failure to present evidence which established a breach of a contractual duty, and that plaintiffs had not offered evidence of a contract between the plaintiffs and Doctors’ Memorial Hospital, or terms of any contract, either direct, implied or otherwise. The trial judge granted the motion for a directed verdict; on appeal, plaintiffs complain that the trial court therein erred.
The directed verdict is provided by LSA-C.C.P. art. 1810, which reads:
“A. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury. “B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.”
*495 The courts have considered this statutory provision and adopted a standard[2] for directed verdicts in Campbell v. Mouton, 373 So.2d 237 (La.App. 3 Cir. 1979). On a motion for directed verdict, the trial judge must consider all evidence, not just that supportive of the opponent’s case, in the light, and with all reasonable inferences, most favorable to the party opposed to the motion. If there is substantial evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the motion for directed verdict must be denied, and the case submitted to the jury. It is only where the facts and reasonable inferences point so strongly and overwhelmingly in favor of the mover that the trial judge can only conclude that reasonable persons could not arrive at a contrary verdict that the granting of the motion for directed verdict is proper.
We thus find that the trial judge erred in directing a verdict in favor of the Hospital. Considering the evidence and all reasonable inferences in the light most of favorable to the plaintiffs, we hold that there was sufficiently substantial evidence to have placed the question before the jury. There was evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions; the motion for directed verdict should have been denied, and the case submitted to the jury.
The record in this case, viewed in the light most favorable to the plaintiffs, reflects the following: the incident which gave rise to this suit occurred on October 16, 1974. Mrs. Dillon, on the second day following a double mastectomy, and while under sedation, fell as she attempted to return from the bathroom unassisted, injured her breast areas. There was a question about the kind of assistance the hospital employees rendered to Mrs. Dillon following her fall.
In support of Mrs. Dillon’s claim, she testified explaining her difficulties and problems. She testified that she requested assistance from the nurse, but she was told to wait until the nurse could get back to her. She stated:
“A. Well, I had been in some pain and had called the nurse and she brought me a shot. And I asked her, you know, if I could go to the bathroom. She said that she had to finish what she was doing and that she would send somebody else or come back herself. And I told her okay. She went ahead and gave me the shot and I waited for a while. It seemed like 20 or 30 minutes, I guess. I needed to go to the bathroom real bad so I pushed the button and they told me that they would be there in just a minute. So I waited again and it must have been about 30 more minutes, I guess. And the bathroom was located — my bed was next to the bathroom. There were two beds in the room I was in but mine was right next to the bathroom. And I thought, well, I will go on to the bathroom myself. You know, I felt like I could make it that far. So I got out of the bed and went to the bathroom. And when I got up off of the commode, everything just went black. When I came to, the girl that was in the bed next to me was standing there, you know, and I asked her if she would push the button and call the nurse. She pushed the red button in the bathroom. This nurse came down there, I don’t know what her name was or who she was or anything. I was hurting real bad. And she caught me by the right arm and she started picking me up off of the floor and I told her, you can’t do that; I have had breast surgery. Well, she turned me a loose [sic] and she acted like she was real mad. And she stepped across me then and she *496 caught my left arm and started to pull me up. And I said, but you can’t do that I have had surgery on both breasts. And she released me again and I hit the floor.
Q. What part of your body hit the floor?
A. The front part of my face.
Q. From what height did you fall?
A. About a foot, I guess, or even maybe a little bit more. I am not sure.
Q. How did you finally get into bed?
A; I remember several nurses were in there and they were trying to put their hands up under me. And that’s all I remember. When I came to I was in the bed.”
Dr. Donald R. Cowick, a general surgeon, testified that he saw Amy Dillon on February 21, 1974, observing a mass on the left breast. He again saw her on October 7, 1974, at which time, after tests, a medical decision to remove the breast tissue was made, because of recurrent problems. She was subsequently admitted to Doctors’ Memorial Hospital on October 13, 1974. Dr. Cowick performed surgery on October 14, 1974, on both breasts and implanted bilateral mammary implants. Her initial prognosis was good. Concerning the fall of Mrs. Dillon on October 16,1974, he testified that there was a note in the hospital record that Dr. Cowick had been called; and that the nurse who, according to the records, had reported the incident to him or his office was very reliable, so that he was certain that the incident was reported, even though he had no independent recollection of the fall or the call. Thereafter, because of skin coverage problems, Dr. Cowick performed another surgical procedure on November 17, 1974, and removed the implants. On July 28,1975, the doctor performed a third surgical procedure, using a different type of implant, with a saline solution, in an effort to overcome the difficulty of the previous implants.
Georgia Talbert, a licensed practical nurse, who had been employed at the Hospital for about six years, testified that she took care of Amy Dillon, and was the nurse who reported the incident of October 16, 1974; but she did not recall the incident, except what was entered in the hospital chart. Mrs. Talbert testified that the patient apparently fell while returning unassisted from the bathroom. She said that she did not recall Mrs. Dillon asking for assistance to go to the bathroom, or asking for a bedpan, at that time. Mrs. Talbert said that she always went to a patient when assistance was requested, and that she would never have refused help to a patient, such as Mrs. Dillon. Further Mrs. Talbert testified that a surgical patient who had undergone a mastectomy would never be picked up by the arms as described by Mrs. Dillon. She never picked up a patient, including Mrs. Dillon, in that way.
Arthur H. Dillon testified that he was notified by phone of his wife’s fall. He also testified about her condition before and after the fall.
Hence, there is substantial evidence upon which the jury could base a finding that there existed a contract between the Dillons and the Hospital, and that the Hospital breached its contract with the Dillons by failing to use due care under the circumstances. Hunt v. Bogalusa Community Medical Center, 303 So.2d 745 (La.1974); see Henson v. St. Paul Fire and Marine Insurance Company, 354 So.2d 612 (La.App. 1 Cir. 1977), affirmed, 363 So.2d 711 (La.1978); Free v. Franklin Guest Home, Inc., 397 So.2d 47 (La.App. 2 Cir. 1981), writ denied, 401 So.2d 975 (La.1981).
The trial judge, in directing a verdict in favor of defendant, obviously believed that the plaintiffs were required to prove that there was a contract warranting or promising a particular result. Phelps v. Donaldson, 243 La. 1118, 150 So.2d 35 (1963); Sumerall v. St. Paul Fire & Marine Insurance Company, 366 So.2d 213 (La.App. 2 Cir. 1978); see also Sciacca v. Polizzi, 403 So.2d 728 (La.1981).
The Sciacca and Sumerall cases are factually distinguishable from the instant case. The instant case does not arise out of medi *497 cal malpractice and is not based on a physician’s negligence. This action arises out of alleged breach of contractual due care.
We thus agree with the plaintiffs that a mere agreement with the hospital to provide health care constitutes an implied contract to use the usual degree of professional skill and care, and that there was sufficiently substantial evidence to go to the jury on the question of breach of the contractual duty of due care.
It also appears that the trial judge accepted the testimony of Nurse Talbert over that of Mrs. Dillon. Making credibility evaluations is one of the primary duties of the jury and the trial judge is not permitted to take this duty from the jury unless the party opposing the motion for directed verdict has failed to produce sufficient evidence upon which reasonable and fair-minded persons could disagree. Campbell v. Mouton, supra.
Since the trial judge’s ruling precluded the introduction of any evidence by the Hospital, the record is incomplete. We are unable to render judgment on this incomplete record. We believe that fairness to all parties dictates that the entire case be remanded for new trial. See McClinton v. Reid, 391 So.2d 506 (La.App. 3 Cir. 1980), writ denied, 396 So.2d 1325, 1326 (La.1981).
For the foregoing reasons, the judgment of the trial court granting the defendant’s motion for a directed verdict is reversed, and the motion is denied. The case is remanded for a new trial not inconsistent with the views expressed herein. Costs of this appeal are assessed to the defendant-appellee. All other costs must await further proceedings.
REVERSED AND REMANDED.

. Since plaintiff’s cause of action vested in 1974, it cannot be barred by LSA-R.S. 9:5628. Zeno v. Lincoln General Hospital, 376 So.2d 1284 (La.App. 2 Cir. 1979).

. The Court in Campbell v. Mouton adopted the standard that is applied in the federal courts. See Boeing Co. v. Shipman, 411 F.2d 365 (C.A. 5, 1969).