Elaine SCHENCK

v.

LIVING CENTERS–EAST, INC. et al.

Civ. A. No. 94–2514.

United States District Court,
E.D. Louisiana.

Feb. 21, 1996.

Jack W. Harang, New Orleans, LA, for plaintiff.

Thomas C. Cowan, New Orleans, LA, for defendant.

## ORDER AND REASONS

BERRIGAN, District Judge.

Defendant, Living Centers–East, Inc. ("Living Centers"), moves for partial summary judgment against five of the plaintiff's six claims. For the reasons stated below, the motion is DENIED as to Counts One, Three and Five and GRANTED as to Counts Four and Six.

Ms. Thelma Caruso, mother of the plaintiff, was a nursing home resident in the Jefferson Health Care Center[1] from May, 1988 until September, 1993. The plaintiff alleges that Ms. Caruso was hospitalized on a number of occasions for broken bones and other injuries during that time, eventually resulting in partial amputation of both her legs. After the second amputation, Ms. Caruso's family chose not to return her to the home. Ms. Caruso is now deceased, apparently for causes unrelated to this litigation. The plaintiff has now brought suit, alleging on a variety of legal grounds, that the defendant failed to provide adequate care for her mother at the nursing home. The defendant seeks summary judgment on five of the six claims on the basis that the allegations have either prescribed or they are otherwise invalid under applicable law.

Summary judgment is appropriate where the record indicates no material facts in dispute and that the moving party is entitled to judgment as a matter of law. Fed.R.Civil Proc. 56(c). No genuine issue of fact exists if the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the

---

1. Jefferson Health Care Center is operated by Living Centers.

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *See id.* Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249–50, 106 S.Ct. at 2511 (citations omitted). Additionally, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the moving party can demonstrate the absence of an essential element of its opponent's case, the burden shifts to the nonmoving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

### Count One—Breach of Contract

In Count One, the plaintiff alleges that the defendant breached a contract to provide Ms. Caruso with reasonable and safe care and to treat her with dignity and respect. The petition also alleges bad faith. The particular contract at issue is an "Admissions Agreement" to the nursing home, in which the home promised "reasonable care" and also pledged to protect the basic constitutional, statutory and regulatory rights of the residents. Among the rights allegedly incorporated are those set forth in 42 U.S.C. § 1396r(b)(2) which commit the home to providing services that will "maintain the highest practicable physical, mental, and psychological well-being of each resident . . . ."

Breach of contracts under Louisiana law have a ten year liberative prescription period. La.S.Ann.Civil Code art. 3499.

The defendant argues that the allegations in the complaint exclusively sound in tort with a one year prescriptive period. The defendant moves for the contract count to be dismissed.

While no Louisiana Supreme Court decision has dealt with this precise issue in this setting, an appellate decision, *Free v. Franklin Guest Home, Inc.*, 397 So.2d 47 (La.App. 2nd Cir.1981), is directly on point. Suit was filed against a nursing home on behalf of a resident, alleging abuse and neglect over a period of several years. The issue was whether the allegations were based exclusively on tort, hence one year's prescription, or breach of contract, hence ten years. The plaintiff argued that the incidents of abuse and neglect were tortious but also violated a written contract, specifically the "Admission Agreement" and a document entitled "Patient's Rights." In the Admission Agreement, the home agreed to exercise "reasonable care" toward the resident; the Patient's Rights document pledged that the resident would not be abused and would be treated with consideration and respect.

The Second Circuit concluded that "there was clearly a contractual relationship between the nursing home and Mr. Free . . ." 397 So.2d at 48 and found the ten year prescriptive period to apply. The court considered it "well settled" that the same act or omission could constitute both a tort *and* a breach of contract. 397 SO.2d at 49. The court also concluded that even if the language of the contract added nothing to the general obligations of a nursing home towards a resident in the absence of an express contract, the home nonetheless chose to enter the contract and was thereby bound in contract. The defendant in *Free* had relied on a series of cases that held that actions for medical malpractice against a physician or a hospital are in tort and not contract, unless the doctor promised a particular result. The Second Circuit distinguished those cases on the basis that (1) in this instance a written contract existed, with contractual obligations and (2) that those other suits involved claims against an individual physician. Finally, the court appeared to find significant that the plaintiff's allegations involved several incidents of neglect and abuse which, when viewed cumulatively, were sufficient to amount to a breach of the contract if proven.

The defendant apparently concedes that if *Free* is the applicable law, the breach of contract claim survives and the ten year liberative prescription applies. The defendant instead argues that *Free* has been either directly or indirectly rejected by subsequent

state caselaw. This court disagrees. Writs were applied for in *Free* and denied by the Louisiana Supreme Court. While writ denials are necessarily cryptic in significance, it is noteworthy that the *only* issue on the writ application was the one at issue here. The *Free* decision has also been cited favorably by a number of subsequent appellate cases. In *Dillon v. Hospital Affiliates of Baton Rouge*, 407 So.2d 493 (La.App. 1st Cir.1981), the Louisiana First Circuit cited *Free* in holding that the ten year prescription applied to a hospital which was alleged to have breached its contractual obligation to provide due care. *Free* has also been cited for the principle that a hospital owes a duty of care to the patients that is independent of any obligation owed by the treating physician. *Bossier v. DeSoto General Hospital*, 442 So.2d 485 (La.App. 2nd Cir.1983); see also *Martin v. Southern Baptist Hospital of New Orleans*, 444 So.2d 1309 (La.App. 4th Cir. 1984) (without citing *Free*, the Fourth Circuit found that one year prescription did not apply to a claim that a hospital breached its obligation to provide due care). *Free* has also been repeatedly cited for the principle that the same act or omission can constitute a tort *and* a breach on contract. *Succession of Dubos*, 453 So.2d 323 (La.App. 4th Cir. 1984); *Ridge Oak Development, Inc. v. Murphy*, 641 So.2d 586 (La.App. 4th Cir.1994); *Dubin v. Dubin*, 641 So.2d 1036 (La.App. 2nd Cir.1994); *Reeves v. Dixie Brick, Inc.*, 403 So.2d 792 (La.App. 2nd Cir.1981).

The defendant cites *Kildron v. Shady Oaks Nursing Home*, 549 So.2d 395 (La.App. 2nd Cir.1989) and *McCartney v. Columbia Heights Nursing Home, Inc.*, 634 So.2d 927 (La.App. 2nd Cir.1994) as indications that *Free* has been rejected. In both of those cases, the litigation was brought as a tort case, apparently within a year of the underlying incident. A breach of contract claim was not even raised, much less was one at issue. The cases did not mention *Free* and are not inconsistent with the principle that the same act can constitute a tort as well as a contractual breach.

The defendant also relies on *Roger v. Dufrene*, 613 So.2d 947 (La.1993). In *Dufrene*, the Louisiana Supreme Court concluded that a lawsuit against an individual insurance agent for negligence was analogous to a suit by a patient against a physician and therefore the one year prescription for tort applied. *Dufrene* is simply inapplicable factually. That decision is consistent with the caselaw acknowledged and distinguished in *Free*, namely that allegations of negligence against individual physicians (or in the case of *Dufrene*, individual insurance agents) are separate and distinct from a suit against an entity for breach of a contractual obligation to provide due care. The defendant also understandably cites the case of *Freedman v. ARA Living Centers–East, Inc.*, 1994 WL 180098 (E.D.La.1994), which found that *Dufrene* had in fact effectively overruled *Free* and that a one year prescriptive period applies to allegations such as here against a nursing home. We recognize and respect the decision of another section of this court but in this instance, simply disagree with that decision.

The defendant further cites *Kozan v. Comstock*, 270 F.2d 839 (5th Cir.1959), *Sciacca v. Polizzi*, 403 So.2d 728 (La.1981) and *Cherokee Restaurant, Inc. v. Pierson*, 428 So.2d 995 (La.App. 1st Cir.1983). Again, each of those cases dealt with negligence suits filed against individuals, circumstances that were factually distinguished in *Free*.

In various reply briefs, the defendant further cites *Harrison v. Gore*, 660 So.2d 563 (La.App. 2nd Cir.1995). In that case, a student sued a school after she was allegedly molested by a coach. She claimed a ten year prescriptive period based on breach of contract. Both the trial court and appellate court found that the contract at issue, the tuition agreement, promised only a physical plant and educational personnel so no contractual duty was owed. While the decision also contains language indicating that even if the contract language had covered the allegation raised, one year prescription would still apply, the facts are distinguishable from the specific contract and circumstances existing here.

Finally, the defendant argues that under La.R.S. 9:5628, actions against nursing homes, be they in tort or breach of contract, are limited to one year prescription. The

court reads the statute differently. The statute encompasses hospitals but says nothing about nursing homes. Defendant argues that the reference in the statute to R.S. 40:1299.41(A) is meant to include nursing homes in the definition of hospital. In fact, prior to 1990, the statute included hospitals but made no mention of 40:1299.41(A). In 1990, the legislature added "or community blood center or tissue bank as defined in R.S. 40:1299.41(A)." Clearly the reference to Title 40 refers back to the blood centers and tissue banks, but not to the word hospital.

The court finds that *Free* is still good law and that the ten year prescriptive period for breach of contract applies.

The court emphasizes however that this conclusion is limited to and based on the unique circumstances of a nursing home setting, which is also the factual basis in *Free.* Residents are in the care and custody of the home on a 24–hour basis, with all their needs necessarily supplied by the facility. Residents are almost invariably in poor physical and/or mental health; they are frequently incompetent and unable to comprehend much less protest any mistreatment or neglect; their families likewise are not in a position to readily know whether injuries are caused by genuine accidents or whether they result from neglect or abuse. See in particular, "The Plight of Elderly Nursing Home Residents in Louisiana," 38 *Loyola Law Review* 153 (1992). These various factors make such residents particularly vulnerable to neglect and a variety of possible abuses with detection arguably difficult ... unlike the situation where a presumably competent person seeks a consultation with a physician for a particular problem or even requires hospitalization for a particular malady. In 1985, the Louisiana legislature recognized the unique dangers facing nursing homes residents by stating that such individuals are "isolated from the community and often lack the means to assert their rights as individual citizens." La.R.S. 40:2010.6. The legislature enacted a lengthy and detailed residents' "bill of rights" applicable to all nursing homes, which among other commitments, pledges "adequate and appropriate ... care," courteous and fair treatment, and freedom from "men-

tal and physical abuse." La.R.S. 40:2010.8. The statute also provides for a cause of action to sue if the rights are violated. La.R.S. 40:2010.9. In light of this clear legislative concern for nursing home residents and the continued viability, in this court's opinion, of the *Free* decision, the defendant's motion for summary judgment regarding the contractual claim is denied.

*Count Three—Breach of Fiduciary Duty*

The plaintiff alleges that Living Centers–East violated a fiduciary duty in its inadequate care of Ms. Caruso. The defendant argues that as a matter of law no such fiduciary duty existed. Ironically, in light of defendant's position as to Count One, part of the defendant's argument is that this case involves a contractual relationship and Louisiana courts have consistently declined to impose a fiduciary duty in that context. The defendant also points out that no specific statute imposes a fiduciary relationship on health care providers and patients.

The defendants are correct in that the mere existence of a contractual relationship does not alone create a fiduciary duty. Nor could the court find any case discussing whether or not a fiduciary relationship necessarily exists between a nursing home and its residents. Breaches of fiduciary commitments appear to arise most frequently in financial contexts, where someone has entrusted their finances to the care and custody of another, such as a conservator, receiver or trustee in bankruptcy. See La.R.S. 9:3801(2). Nevertheless, the definition of a fiduciary is not bound to a particular type of transaction; rather it is determined by the nature of the relationship between the parties.

> The dominant characteristic of a fiduciary relationship is the confidence reposed by one in the other and (a person) occupying such a relationship can not further his own interests and enjoy the fruits of an advantage taken of such relationship.

*Plaquemines Parish Commission Council v. Delta Development Co.,* 502 So.2d 1034, 1040 (La.1987).

"The duty of loyalty which results from the position of trust distinguishes the fiduciary

relationship." *Gerdes v. Estate of Cush,* 953 F.2d 201, 203 (5th Cir.1992).

As noted already, many if not most nursing home residents are in a vulnerable physical and/or mental state. Placing a loved one in such a facility necessarily entails trust on the part of the family as well as the resident. Since the residents reside in the home, the family has comparatively limited access and opportunity to learn if the resident is neglected or otherwise mistreated. If entrusting one's money to a receiver or conservator creates a fiduciary as well as business relationship, one would hope at least in principle that entrusting a valued family member to the care of a business entity such as a nursing home would carry similar responsibilities.

The claim requires factual development to determine if in this case such a fiduciary duty was created. For that reason, the request for summary judgment is denied.

*Count Four—Negligent Infliction of Emotional Distress*

The plaintiff claims that she suffered emotional distress as a result of witnessing the harm caused to her mother by the conduct of the defendant. The defendant cites the deposition testimony of the plaintiff and alleges that her level of distress is insufficient to reach the level required for a legal claim.

In *Lejeune v. Rayne Branch Hospital,* 556 So.2d 559 (La.1990), the Louisiana Supreme Court set forth the standards necessary for a claim for mental pain and anguish by a person not directly injured. The emotional distress sustained must be serious. "Serious emotional distress, of course, goes beyond simple mental pain and anguish ... (it must be) both severe and debilitating." 556 So.2d at 570. Examples given include "neuroses, psychoses, chronic depression, phobia and shock." *Ibid.*

In the deposition excerpt cited by the defendant, the plaintiff stated that her mother's condition "got me down sometimes" but she did not seek any medical care. At oral argument, the plaintiff indicated it had no other evidence to present on that issue.

Since the plaintiff apparently did not suffer the "severe and debilitating" type of mental distress necessary for this claim, the summary judgment motion is granted.

*Count Five—Violation of Statutory Duty Owed to Nursing Home Resident*

In Count Five, the plaintiff alleges the defendant violated Ms. Caruso's rights under La.R.S. 40:2010.8, the particular statute intended to protect nursing home residents. The defendant seeks dismissal of the claim on the basis that it is duplicative of the tort claim.

La.R.S. 40:2010.9 provides that if the resident's rights are violated, a cause of action arises against the nursing home for enforcement of the rights and damages for their breach. The statute also allows for attorney's fees and costs. The remedies provided are "in addition to and cumulative with other legal and administrative remedies available to a resident ..." § 2010.9(B).

The motion for summary judgment is denied.

*Count Six—Violation of Unfair Trade Practices and Consumer Protection*

The plaintiff's fifth claim is brought under the Louisiana Unfair Trade Practices Act, La.Rev.Stat. 51:1401 *et seq* ("LUTPA"). The defendants argue that the plaintiff has not suffered an ascertainable loss and is not covered by the statute.

Section 1409A of the LUTPA provides in pertinent part:

> Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice ... may bring an action *individually but not in a representative capacity* to recover actual damages.

The statute protects consumers and business competitors. *Landrum v. Board of Commissioners,* 758 F.Supp. 387 (E.D.La. 1991). It defines "consumer" as "any person who uses, purchases, or leases goods or services. La.Rev.Stat. 51:1402(1).

■ In order to recover on a claim for damages under the LUTPA, the plaintiff must prove some element of fraud, misrepresentation or other ethical conduct. A trade practice is unfair under the statute only when it offends established public policy and is immoral, unethical, oppressive or unscrupulous. *Omnitech International, Inc. v. Clorox Co.*, 11 F.3d 1316, 1332 (5th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 71, 130 L.Ed.2d 26 (1994).

■ Here, the plaintiff's claim fails for two reasons. First, this action is clearly brought by the plaintiff in a capacity representative of her deceased mother's estate. Although the Court was unable to find jurisprudence addressing this type of representation, any suit brought in a representative capacity is precluded by the clear language of the statute.

■ In addition, the Court finds that the plaintiff has not provided any evidence that supports either the type or level of egregious conduct sufficient to support a LUTPA violation. Mere breach of contract is not actionable under the LUTPA. *Turner v. Purina Mills, Inc.*, 989 F.2d 1419 (5th Cir.1993). "The real thrust of the LUTPA, modeled after the Federal Trade Commissions Act ... is to deter injury to competition." *Omnitech*, 11 F.3d at 1331. Accordingly, the claim under the LUTPA is dismissed.