# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

BAYYINAH CUNNINGHAM,      )
          Plaintiff,       )
                           )
                           )
         v.               )   C.A. No.: N20C-10-287 VLM
                           )
                           )
KENTMERE REHABILITATION   )
AND HEALTHCARE CENTER,    )
INC.,                            )
         Defendants.    )

## ORDER

Submitted: March 16, 2021
Decided: March 25, 2021

*Upon Consideration of Defendant's Motion to Dismiss*,
**GRANTED** in part**, DENIED** in part.

Joshua J. Inkell, Esquire of Hudson & Castle Law, LLC, Wilmington, Delaware.
*Attorney for Plaintiff.*

Maria R. Granaudo, Esquire of Burns White, LLC, Wilmington, Delaware.
*Attorney for Defendant*.

**MEDINILLA, J.**

**AND NOW TO WIT**, this 25th day of March, 2021, upon consideration of Defendant Kentmere Rehabilitation and Healthcare Center's Motion to Dismiss, Plaintiff's Response in Opposition, Defendant's Reply, oral argument, and the record in this case, **IT IS HEREBY ORDERED** that Defendant's Motion is **GRANTED** in part, and **DENIED** in part for the following reasons:

1. Plaintiff Bayyinah Cunningham ("Plaintiff") is the daughter and Personal Representative of the Estate of Gloria Rashada ("Ms. Rashada").[1] From August 7, 2018, until July 13, 2019, Ms. Rashada was a resident of a nursing home facility located at 704 River Road in Wilmington, Delaware (the "Facility").[2] The Facility was owned and operated by Defendant Kentmere Rehabilitation and Healthcare Center, Inc. ("Defendant").[3] During the time in which Ms. Rashada was a resident at the Facility, Defendant "controlled the management and healthcare decisions and exercised control over, and authorized the daily work of their employees."[4]

2. During Ms. Rashada's time at the Facility, she was at risk for falls and the development and deterioration of pressure sores.[5] Between August 7, 2018, and March 9, 2019, Ms. Rashada sustained approximately fourteen falls while at the

---

[1] Complaint, D.I. 1, ¶ 1.
[2] *Id.* ¶¶ 4, 19.
[3] *Id.* ¶¶ 4-5.
[4] *Id.* ¶ 8.
[5] *Id.* ¶ 21.

Facility.[6]  On October 30, 2018, an open area on Ms. Rashada's coccyx and right buttocks were first noticed, which would develop into pressure ulcers.[7]

3.      On March 9, 2019, Ms. Rashada sustained the last of her recorded fourteen falls.[8]  As a result of the March 9 fall, Ms. Rashada was taken to St. Francis hospital where it was discovered she had sustained a hip fracture.[9]  Corrective surgery was performed on March 12, 2019, and Ms. Rashada remained at St. Francis until March 28, 2019 after which she was transferred to Select Specialty Hospital until April 25, 2019 when she returned to the Facility.[10]

4.      On May 11, 2019, Plaintiff visited Ms. Rashada at the Facility and noticed that Ms. Rashada's eyes were glazed over.[11]  Plaintiff asked Ms. Rashada's doctor about her, but the doctor told Plaintiff that Ms. Rashada was fine.[12]  Plaintiff then called for emergency services and Ms. Rashada was taken to St. Francis where she was diagnosed with an infection of her pressure ulcer which had made its way into Ms. Rashada's bloodstream.[13]  Ms. Rashada returned to the Facility on May 14, 2019.[14]

---

[6] Complaint, ¶¶ 22-38.
[7] *Id.* ¶¶ 29, 44.
[8] *Id.* ¶ 40.
[9] *Id.* ¶¶ 41-42.
[10] *Id.* ¶¶ 42-44.
[11] *Id.* ¶ 45.
[12] *Id.*
[13] *Id.* ¶¶ 45-46.
[14] *Id.* ¶ 47.

5.      On June 20, 2019, Ms. Rashada was sent to Christiana Care for wound care.[15]  She was later admitted after it was learned that her feeding tube, gallbladder, and ulcer on her right buttock and coccyx had become infected.[16]  Ms. Rashada was readmitted to the Facility on July 10, 2019, at which time she had a Stage IV pressure ulcer with bone exposure.[17]  The next day she returned to the hospital where she passed away on July 30, 2019.[18]

6.      On October 30, 2020, Plaintiff brought this action against Defendant, alleging, in part, medical negligence and a series of additional claims.[19]  On January 29, 2021, Defendant filed this Motion to Dismiss that seeks to dismiss the claims of Breach of Fiduciary Duty (Count II), Consumer Fraud (Count IV)[20], and Negligence *Per Se* Based on Federal and State Law (Counts V & VI).[21]  On February 25, 2021, Plaintiff filed her response in opposition.  On March 4, 2021, Defendant filed its reply.  Oral argument was held on March 16, 2021.  This matter is ripe for decision.

---

[15] Complaint, ¶ 53.
[16] *Id.* ¶ 49.
[17] *Id.* ¶¶ 54-55.
[18] *Id.* ¶ 56.
[19] Plaintiff's Claims are as follows: Count I Survival; Count II Breach of Fiduciary Duty; Count III Deceptive Trade Practices; Count IV Consumer Fraud; Count V Negligence Per Se Based on Federal Law; Count VI Negligence Per Se Based on State Law; Count VII Wrongful Death; and Count VIII Punitive Damages.
[20] As of March 23, 2021, Plaintiff indicated an intent to voluntarily withdraw this claim after a review of the pertinent case law provided by Defendant at oral argument on March 16, 2021. As such, this issue is considered moot.
[21] *See* Defendant's Motion to Dismiss, D.I. 11.

**Party Contentions**

7.      Defendant argues that Plaintiff's claims for Breach of Fiduciary Duty, Consumer Fraud and Negligence *Per Se* have not been adequately plead.[22]  In the alternative Defendant argues that Plaintiff's claims are predicated upon theories that do not entitle Plaintiff to relief.[23]  Plaintiff argues that this case involves the same and/or similar arguments made by Defendant in *D'Agostino v. The Milton & Hattie Kutz Home, Inc., et al.*[24] currently before this Court and asks the Court to rule consistently and against Defendant.[25]

**Standard of Review**

8.      On a Motion to Dismiss for failure to state a claim under Superior Court Civil Rule 12(b)(6), all well-pleaded allegations in the complaint must be accepted as true.[26]  Even vague allegations are considered well plead if they give the opposing party notice of a claim.[27]  The Court must draw all reasonable inferences in favor of the non-moving party.[28]   However, it will not "accept conclusory allegations unsupported by specific facts," nor will it "draw unreasonable inferences in favor of

---

[22] Defendant's Opening Brief, D.I. 12, at 4 [hereinafter Def's Opening Brief].
[23] *Id.*
[24] *D'Agostino v. The Milton & Hattie Kutz Home, Inc., et al.*, C.A. No. N20C-09-148 VLM.
[25] Plaintiff's Answering Brief, D.I. 17, at 3 [hereinafter Plaintiff's Answering Brief].
[26] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).
[27] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002)).
[28] *Id.*

4

the non-moving party."[29]  The Court will grant the motion to dismiss "only if it appears with reasonable certainty that the plaintiff could not prove any set of facts that would entitle [the plaintiff] to relief."[30]

## Discussion

### A.    Count II: Breach of Fiduciary Duty

9.    Defendant argues that Plaintiff has failed to state a claim because no fiduciary relationship existed between Defendant and Ms. Rashada or Plaintiff.[31] Plaintiff argues that whether a fiduciary relationship exists is a question of fact that should be left to the jury and dismissal at this juncture is inappropriate.[32]  Plaintiff also argues that where this Court has considered that a fiduciary duty may exist between a patient and a nursing home as it discussed in *D'Agostino*, dismissal is not proper.[33]

10.    To make out a claim for breach of fiduciary duty, Plaintiff must establish two elements: (1) that Defendant owed a fiduciary duty to Plaintiff; and (2) that Defendant breached the fiduciary duty.[34]  A fiduciary relationship is when "one person reposes special trust in and reliance on the judgment of another or where a special duty exists on the part of one person in another to protect the interests of

---

[29] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (citation omitted).
[30] *Sliney v. New Castle Cty.*, 2019 WL 7163356, at *1 (Del. Super. Dec. 23, 2019).
[31] Def's Opening Brief, at 5.
[32] Plaintiff's Answering Brief, at 6.
[33] *Id.*
[34] *Estate of Eller v. Barton*, 21 A.3d 895, 897 (Del. 2011).

5

another."[35]  Whether a particular relationship gives rise to a fiduciary status is a question of fact.[36]  In deciding whether a fiduciary relationship exists, the Court may consider factors including whether: (1) a "party places trust in the faithful integrity of another who thus gains superiority or influence;" (2) "one party assumes control and responsibility over another;" (3) "one party has a duty to act or give advice for matters within the relationship;" and (4) "there is a traditionally recognized fiduciary relationship."[37]  The crux of Defendant's argument revolves around the final factor, i.e. whether a long-term nursing facility would be a traditionally recognized fiduciary relationship.  The other three factors are not in contention.

11.  In this case, while perhaps not true of all nursing home or long-term care facility cases, this Plaintiff specifically claims that her mother, Ms. Rashada, was incapable of caring for herself due to age and infirmities and that she enjoyed a fiduciary relationship with Defendant, alleging the existence of a traditionally recognized fiduciary relationship with its patients.

12.  It is true that other jurisdictions have held that a fiduciary relationship *may* exist between a nursing home and its residents.[38]  For example, in *Petre v. Living*

---

[35] *Bamford v. Penfold, L.P.*, 2020 WL 967942, at *8 (Del. Ch. Feb. 28, 2020) (quoting *Cheese Shop Int'l v. Steele*, 303 A.2d 689, 690 (Del. Ch.), *rev'd on other grounds*, 311 A.2d 870 (Del. 1973)) (internal quotations omitted).

[36] *Id.* (quoting *White v. Lamborn*, 1977 WL 9612, at *4 (Del. Ch. Mar. 16, 1977)).

[37] *Beyers v. Bd. of Educ.*, 2011 Del. Super. LEXIS 1678, at *17.

[38] *See Zaborowski v. Hospitality Care Ctr. of Hermitage, Inc.*, 2002 Pa. Dist. & Cnty. Dec. LEXIS 169, *20-21; *Petre v. Living Centers-East*, 935 F. Supp. 808, 812 (E.D. La. 1996); *but see Manor Care, Inc. v. Douglas*, 763 S.E.2d 73 (W. Va. 2014).

*Centers-East*, the Federal District Court for the Eastern District of Louisiana denied defendant's motion for summary judgment and allowed the case to go to a jury.[39] Finding that while a fiduciary relationship normally exists in the context of a business relationship, "one would hope at least in principle that entrusting a valued family member to the care of a business entity such as a nursing home would carry similar responsibilities."[40] Defendant deflects and cites *Corrado Bros., Inc. v. Twin City Fire Ins. Co.,*[41] and *Beyers v. Board of Education*[42] in support of its argument that a nursing home is does not have a traditionally recognized fiduciary relationship with its patients. But these cases are distinguishable as neither involve a nursing home or were decided at different procedural junctures.

13. First, *Corrado Bros.* involved a contract claim, not a breach of fiduciary claim.[43] Second, while it is true that Defendant is a business, this relationship between Defendant and Ms. Rashada is perhaps more personal than that of the insurer/insured in *Corrado*. To echo *Petre,* this Court too hopes that entrusting one's

---

[39] *Petre*, 935 F. Supp. 808.

[40] *Id.* at 812 (quoting *Schenck v. Living Centers-East, Inc., et al.*, 917 F. Supp. 432, 437-38 (E.D. La. 1996)) (internal quotations omitted).

[41] *Corrado Bros., Inc. v. Twin City Fire Ins. Co.*, 562 A.2d 1188 (Del. 1989) (holding that no fiduciary relationship exists between an insured and the insurance agency where in the context of an insurance relationship, the expected clash of interest was not compatible with the concept of a fiduciary).

[42] *Beyers*, 2011 Del. Super. LEXIS 1678 (holding that no fiduciary relationship exists between a school district and its students after two students were sexually assaulted by teachers where there was the lack of a personal dimension traditionally encountered in recognized fiduciary relationships).

[43] *See Corrado Bros.*, 562 A.2d at 1191-92.

loved one to the care of a business entity such as a nursing home would carry similar responsibilities, and that the patient/nursing home relationship is more personal than a mere contractual relationship between and insured and its insurer.[44]  And, unlike *Beyers*, where no "personal dimension" was found between a school district and its students,[45] here, the Plaintiff has alleged a personal dimension between Ms. Rashada and Defendant as she claims that Ms. Rashada was not able to care for herself due to her age and infirmities.[46]

14.     At this stage it is enough that Plaintiff has set out facts to properly plead her allegation that the relationship existed.  Also, this Court also recently decided that a fiduciary relationship may exist between a nursing home and almost identical claims made in the *D'Agostino* matter.[47]  Like *D'Agostino*, the burden of proving that the relationship exists remains on Plaintiff, but the claim cannot be dismissed at this stage.  Defendants may renew their dispositive motion after discovery, if appropriate.

15.     Drawing all reasonable inferences in favor of Plaintiff under Rule 12(b)(6), Defendant's Motion to Dismiss Count II for Breach of Fiduciary Duty is **DENIED**.

---

[44] *See Petre*, 935 F. Supp. at 812.
[45] *Beyers*, 2011 Del. Super. LEXIS 1678, at *18.
[46] Complaint, ¶ 67.
[47] *See* Judicial Action Form, *D'Agostino v. The Milton & Hattie Kutz Home, Inc. et al.*, N20C-09-148 VLM, D.I. 29 (Del. Super. Jan. 27, 2021).

**B.     Negligence *Per Se***

16.     To make out a claim for Negligence *Per Se*, a plaintiff must establish four elements: (1) that the statute was "enacted for the safety of others;" (2) that a causal connection exists between the statutory violations and the injury, and that Plaintiff was "a member of the class of persons the statute set out to protect;" (3) that the statute set forth "a standard of conduct which was designed to avoid the harm" suffered; and (4) that the defendant violated the statute "by failing to comply with that standard of conduct."[48]

*1.     Count V: Claims Based on Federal Law*

17.     Defendant argues that because Plaintiff has not identified a statute for the basis of her negligence *per se* claim, one cannot be sustained.[49]  In the alternative, Defendant argues that even if a statute has been identified, the claim for negligence *per se* must fail because the OBRA regulations do not set forth a standard of specific conduct involving specific acts that are required.[50]  Plaintiff argues that a statute is not required and that violations of administrative regulations may establish negligence *per se* in certain situations.[51]

---

[48] *NVF Co. v. Garrett Snuff Mills, Inc.* 2002 WL 130536, at *2 (Del. Super. Jan. 30, 2002) (citations omitted).
[49] Def's Opening Brief, at 27.
[50] *Id.* at 28.
[51] Plaintiff's Answering Brief, at 20.

9

18. The Court need not address the parties' arguments as to this count because, as more fully outlined during oral argument, the allegations in Count V are not well plead on its face. Plaintiff lists out the OBRA regulations in paragraph 94 of the Complaint that neither exist nor support the asserted contentions.[52] Plaintiff's counsel admitted as much during oral argument. As such, the Court finds that Plaintiff's claim for Negligence *Per Se* Pursuant to Federal Law has not been adequately plead. Therefore, Defendant's Motion to Dismiss Count V: Negligence *Per Se* Pursuant to Federal Law is **GRANTED**, without prejudice.

### 2. *Count VI: Claims Based on State Law*

19. Plaintiff alleges negligence *per se* for violations under 16 *Del C* §§ 1131(11) and 1136.[53] Section 1136 sets forth criminal degrees of culpability for persons that are found to have abused, mistreated, or neglected residents of a long-term care facility.[54] Defendant first argues dismissal is appropriate because Chapter

---

[52] Paragraph 94(a) Plaintiff cites to regulation 483.13(c) when such a regulation no longer exists. In paragraph 94(d) Plaintiff cites to regulation 483.20(k) for the contention that a nursing facility had to appropriately develop, implement, and revise a care plan to address Ms. Rashada's fall risk and the risk that she would develop pressure ulcers. However, regulation 483.20(k) deals with preadmission screening for individuals with mental health disorders and intellectual disabilities. In paragraphs 94(e) and 94(f) Plaintiff cites to regulations 483.25(h)(1) and (h)(2) respectively, but there are no subsections to regulation 483.25(h). In paragraph 94(h) Plaintiff cites to regulation 483.75(b) contending that Defendant failed to comply with federal, state, and local laws, and professional standards in violation of the regulation; this regulation does not support such a contention. In paragraph 94(i) Plaintiff cites to regulation 483.75(i)(1) for failure to keep medical records; there is no regulation 483.75(i)(1).
[53] *See* Complaint, ¶¶ 99-103.
[54] 16 *Del. C.* § 1136 ("Any person who knowingly or recklessly abuses, mistreats, or neglects a patient or resident of a facility is guilty of a class A misdemeanor.").

11 is a licensing statute and therefore it cannot constitute the basis for negligence *per se*.[55] In support, Defendant cites to *Tydings v. Loewenstein*[56] and *Fansler v. North American Title Insurance Company*.[57] Alternatively, it argues that §§ 1131(11) and 1136 do not identify a specific standard of conduct such that the statute cannot support a claim for negligence *per se,*[58] mainly that § 1131(11) defines "neglect," but fails to set forth a standard of care,[59] and that since Defendant is not a "person," under § 1136, it cannot apply here.[60] Neither argument supports dismissal.

20.     Both *Tydings and Fansler* discuss the applicability of a different statute; Section 2802 of the Delaware Professional Engineers Act.[61] In *Tydings*, the Delaware Supreme Court held that the Superior Court did not err in failing to provide a jury instruction on negligence *per se* for violation of the statute.[62] Notably, that case went to a jury and the Court's focus was procedurally different as it was not asked to conduct a 12(b)(6) analysis as here.

21.     Moreover, that Court found that the Delaware Professional Engineers Act is a licensing statute that does not define a standard of conduct.[63] This is what

---

[55] Def's Opening Brief, at 23.
[56] *Tydings v. Loewenstein*, 505 A.2d 443 (Del. 1986).
[57] *Fansler v. N. Am. Title Ins. Co.*, 2020 WL 5793750 (Del. Super. Sept. 29,2020).
[58] Def's Opening Brief, at 29.
[59] *Id.* at 30-31.
[60] *Id.* at 31-32.
[61] 24 *Del. C.* § 2801 *et seq.*
[62] *Tydings*, 505 A.2d at 446.
[63] *Id.*

11

proved fatal to the *Tydings* plaintiff that found that the Professional Engineering Act could not constitute the basis for negligence *per se*.[64] To be clear, *Tydings* did not hold that a licensing statue could never form the basis of negligence *per se*. Instead, it stated that a statute that does not "define a standard of conduct" could not form the basis for negligence *per se*.[65]

22. Here, the statute relied upon by Plaintiff to establish her claim is Chapter 11 of Title 16. It provides not only do state regulations establish the "minimum acceptable levels of care," the actual statute does as well.[66] Further the statute states that "[t]his chapter and its regulations . . . are designed to be useful to consumers and providers in assessing the quality of care in a facility."[67] Similarly, in *Fansler*, the Superior Court followed the holding in *Tydings* and granted summary judgment.[68] For the same reasons as *Tydings,* the Court finds that *Fansler*—also decided at a different procedural posture—is distinguishable.

23. Lastly, it cannot be said that a violation under § 1136 which provides criminal degrees of culpability can never form the basis for a negligence *per se*

---

[64] *Tydings*, 505 A.2d at 446.
[65] *See id.*
[66] *See* 16 *Del. C.* § 1101(b) ("This chapter and the regulations adopted to implement it establish minimum acceptable levels of care.").
[67] *Id.* § 1101(f).
[68] *See Fansler*, 2020 WL 5793750 at *3.

claim.[69]  This argument is counter to what we know often supports a basis for a strong negligence *per se* claim (i.e., violations on the part of caregivers that support findings of criminal liability.)  Further, Defendant ignores the definition of "person" under the statute.  Section 1131(12) defines "person" as a "human being and, where appropriate, a public or private corporation, an entity, an unincorporated association, a partnership, a government, or government instrumentality."[70]  As such the Court finds that Plaintiff has sufficiently alleged in her Complaint violations under § 1136 to survive dismissal of her claim of negligence *per se*.  Therefore, Defendant's Motion to Dismiss Count VI: Negligence *Per Se* Pursuant to State Law is **DENIED**.

## Conclusion

For the reasons stated above, Defendant's Motion to Dismiss is **GRANTED** as to Count V for Negligence *Per Se* Pursuant to Federal Law.  Defendant's Motion is **DENIED** as to Count II for Breach of Fiduciary Duty and Count VI for Negligence *Per Se* Pursuant to State Law.

/s/ Vivian L. Medinilla
Vivian L. Medinilla
Judge

---

[69] *See Sammons v. Ridgeway*, 293 A.2d 547, 550 (Del. 1972) ("We note, too, the historical relationship between criminal statutes and the development of the doctrine of negligence *per se*.").
[70] 16 *Del. C.* § 1131(12).