■ LOUISE R. SWEET et al., Appellants, v PAUL AUSTIN, Defendant, and RUPERTO S. YOUNG et al., Respondents. [641 NYS2d 165] —Cardona, P. J. Appeal from an order of the Supreme Court (Keniry, J.), entered April 3, 1995 in Fulton County, which granted motions by defendants Ruperto S. Young and St. Mary's Hospital at Amsterdam for, *inter alia*, summary judgment dismissing the complaint against them.

On April 15, 1985, plaintiff Louise R. Sweet (hereinafter plaintiff) came under the care of defendant Paul Austin, an ophthalmologist, for blurriness and double vision in her left eye. Plaintiff was treated by Austin for these symptoms on numerous occasions until 1991. In May 1987, Austin ordered a CT scan of plaintiff's head at defendant St. Mary's Hospital at Amsterdam (hereinafter SMH). According to Austin, the purpose of the test was to rule out the possibility that a brain tumor was causing plaintiff's symptoms. Defendant Ruperto S. Young performed the test on May 7, 1987 and reported it to be "unremarkable". Austin stated that he told plaintiff the CT scan was normal and a one-year return visit was scheduled for May 1988. According to Austin, at this visit as well as a September 1989 visit, plaintiff's double vision had resolved itself. However, when plaintiff saw Austin in May 1990, she reported blurred vision and he offered to repeat the CT scan, but she refused. A March 1991 exam revealed double vision

---

but, according to Austin, plaintiff again refused another CT scan. At her June 1991 visit, plaintiff did, however, consent to a CT scan which was given on June 20, 1991. Young performed this test and reported a "mass lesion" at the base of plaintiff's skull.

Plaintiff and her husband, derivatively, thereafter commenced this action for medical malpractice by summons and complaint dated May 29, 1992, alleging, *inter alia*, that Young failed to identify the existence of the brain tumor in the CT scan performed in May 1987. Young and SMH each moved to dismiss pursuant to CPLR 3211 (a) (5) and 3212, contending that the action was time barred. Supreme Court initially denied the motions without prejudice pending further discovery. Discovery was completed and the motions were renewed. Supreme Court granted the motions and plaintiffs appeal.

We affirm. Medical malpractice actions must normally be commenced within 2½ years "of the act, omission or failure complained of " (CPLR 214-a). Once a defendant meets the threshold requirement of establishing by prima facie proof that the Statute of Limitations has run, the burden shifts to the plaintiff to aver evidentiary facts showing that an exception to the statutory period exists (*see, Pierre-Louis v Ching-Yuan Hwa*, 182 AD2d 55, 57). Here, the causes of action against Young and SMH are based on Young's alleged misinterpretation of plaintiff's 1987 CT scan. This action was not commenced until 1992, well beyond the 2½-year Statute of Limitations. A prima facie defense was thus established. To avoid dismissal, plaintiffs relied on the continuous treatment doctrine to toll the Statute of Limitations. We conclude that, under the circumstances of this case, that doctrine is inapplicable.

There is no proof in the record that the second CT scan performed by Young in 1991 was a continuation of the CT scan performed in 1987. Instead, the record establishes that each of the tests was distinct and unrelated to any continuing treatment by Young (*see, Brocco v Westchester Radiological Assocs.*, 175 AD2d 903, 904). It is uncontroverted that Young and plaintiff had no communication or contact beyond the interpretation of her 1987 and 1991 CT scans and had no contact during the time interval between the two CT scans. Instead, plaintiffs contend that there are issues of fact as to whether, after the 1987 CT scan, the need for further treatment was anticipated by plaintiff and Young (*see, Rizk v Cohen*, 73 NY2d 98, 103; *Richardson v Orentreich*, 64 NY2d 896, 898-899). The proof in the record, however, fails to support this contention. Young stated that if something suspicious appeared on the CT

scan he would have recommended further testing, but that here he made no such recommendation after the 1987 test. Plaintiffs claim that the 1987 CT scan was suspicious because, although they revealed no abnormality, plaintiff's symptoms were to the contrary. That, however, is not proof that further treatment with Young was either anticipated or contemplated or that a relationship between plaintiff and Young remained (*see, Jones v Peacock*, 183 AD2d 1039). Even if plaintiff anticipated further treatment because of the persistence of her symptoms, nothing in the record reflects that such anticipation was related to anyone other than Austin. The fact that the condition allegedly overlooked in the first CT scan was the condition ultimately diagnosed in the later CT scan does not bring the case within the continuing treatment doctrine "even if a correct diagnosis would have led to an ongoing course of treatment" (*Gordon v Magun*, 83 NY2d 881, 883).

Plaintiffs also failed to show that Austin and Young were agents of each other or that there was a continuing relevant relationship between the two doctors (*see, Meath v Mishrick*, 68 NY2d 992, 994; *Janisch v Howland*, 163 AD2d 821, 822, *lv denied* 76 NY2d 713). There is no evidence in the record to suggest that Austin ever consulted with Young during the course of plaintiff's treatment so as to constitute "a legally relevant relationship sufficient for imputation purposes" (*Siegel v Wank*, 183 AD2d 158, 161; *see, Pierre-Louis v Ching-Yuan Hwa, supra*, at 58). Young stated that he never acted as Austin's agent and that Austin did not have permission to act for Young. There were no business agreements to exchange services between the two doctors. Austin stated that he had no contact with Young between the 1987 and 1991 CT scans. Even assuming that Austin continued to rely on the 1987 CT scan, that was insufficient to establish a continuing relevant relationship that would toll the Statute of Limitations against Young (*see, Janisch v Howland, supra; see also, Ganess v City of New York*, 85 NY2d 733). Even where the same consultant performs a second procedure, that does not demonstrate a relevant relationship (*see, Brocco v Westchester Radiological Assocs.*, 175 AD2d 903, *supra*). In our view, the fact that Austin usually sent his patients to SMH for testing and Young performed the CT scans both in 1987 and 1991 is insufficient to establish the imputation of Austin's continuing treatment to Young (*see, Pierre-Louis v Ching-Yuan Hwa*, 182 AD2d 55, *supra*). Austin's general use of SMH is not relevant to Young's specific diagnosis of plaintiff's CT scans or Young's relationship with Austin.

As a final matter, the case was properly dismissed against

SMH insofar as its liability was predicated on Young's negligence while acting in SMH's employ (*see, Meath v Mishrick, supra,* at 994). In addition, the Statute of Limitations cannot be extended against SMH by imputing to it the continuous treatment of plaintiff by Austin by virtue of the latter's status as a physician with privileges at SMH (*see, supra*).

Crew III, Yesawich Jr. and Spain, JJ., concur. Ordered that the order is affirmed, with costs.