SHELLEY ZIELINSKI ET AL. *v.* HARRIET
KOTSORIS ET AL.
(SC 17441)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued May 17—officially released August 8, 2006

*Anthony B. Corleto*, with whom was *Joelle M. Ehmka*, for the appellants (plaintiffs).

*Eric J. Stockman*, for the appellee (defendant Stamford Hospital).

*Charles W. Fleischmann*, with whom, on the brief, was *Garie J. Mulcahey*, for the appellees (defendant Kristan D. Zimmerman et al.).

*Opinion*

NORCOTT, J. In this appeal, we consider whether the continuous treatment doctrine or the continuing course of conduct doctrine tolls the statute of limitations in a medical malpractice case when the plaintiff's condition is subsequently diagnosed or treated by a different physician employed by the same corporate entity that had employed the defendant physician at the time of the alleged negligence. The named plaintiff, Shelley Zielinski, brought this medical malpractice action[1] against the defendants, Harriet Kotsoris,[2] Kristan D. Zimmerman, Stamford Radiological Associates, P.C. (Associates),[3] and Stamford Hospital (hospital), alleging that Kotsoris and Zimmerman negligently misdiagnosed her brain tumor as Lyme disease. The plain-

---

[1] Brian Zielinski, who is the husband of Shelley Zielinski, also brought a loss of consortium action against the various defendants. For sake of convenience, all references to the plaintiff in this opinion are to Shelley Zielinski.

[2] The plaintiff withdrew the action against Kotsoris, the named defendant, prior to filing her appeal, and Kotsoris has not appeared before this court in connection with this appeal. Hereafter, we refer to the remaining defendants collectively as the defendants, and to the individual defendants by name.

[3] The plaintiff initially had named Diagnostic Imaging Center (Diagnostic), as a defendant as Zimmerman's employer. The trial court, *Hon. William B. Lewis*, judge trial referee, granted the plaintiff's motion to substitute Associates as a defendant in lieu of Diagnostic when the plaintiff learned through discovery that Diagnostic was not Zimmerman's employer.

tiff appeals[4] from the trial court's granting of the defendants' motions for summary judgment on the basis that those claims were time barred by the expiration of the relevant statute of limitations, specifically General Statutes § 52-584.[5] We affirm the judgment of the trial court.

The record, viewed in the light most favorable to the nonmoving plaintiff for purposes of reviewing the trial court's grant of summary judgment, reveals the following facts and procedural history. On April 3, 1996, the plaintiff went to Kotsoris, a board certified internist and neurologist, for evaluation of symptoms including fatigue, headache and tinnitus. Kotsoris tentatively diagnosed the plaintiff with Lyme disease, and sent her to the hospital for a magnetic resonance imaging (MRI) of her brain, which was performed on April 10, 1996. Subsequently, both Kotsoris and Zimmerman, a radiologist who is a partner in Associates, which functionally is the hospital's radiology department, reviewed that MRI. Both physicians failed to detect the presence of an early brain tumor on that MRI, and Kotsoris continued to treat the plaintiff for Lyme disease, notwithstanding the fact that testing for that illness was negative or inconclusive. Zimmerman never had any contact with the plaintiff at that time, and never again reviewed a film in her case.

---

[4] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[5] General Statutes § 52-584 provides: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

The plaintiff's symptoms did not abate, and Kotsoris referred her back to the hospital on December 10, 1999, for another MRI. William Harley, a neuroradiologist who also is a partner in Associates, read that MRI and reported to Kotsoris that it revealed the presence of a 2.2 centimeter mass in the fourth ventricle of the plaintiff's brain. Harley also reviewed the 1996 MRI and determined that the tumor was visible on that film as well. Thereafter, the plaintiff underwent surgery and radiation treatment, both of which were rendered riskier and more invasive because of the delay in starting treatment.

The plaintiff brought this action on September 17, 2001, alleging that Kotsoris and Zimmerman negligently failed to detect the tumor on the 1996 MRI, and that Associates and the hospital were liable for Zimmerman's negligence. Following discovery, Zimmerman, Associates and the hospital moved for summary judgment.[6] Zimmerman, Associates and the hospital also moved, pursuant to Practice Book § 13-14, to preclude the plaintiff from offering expert testimony at trial because she had failed to disclose an expert witness "within a reasonable time prior to trial." The trial court, *Tobin, J.*, granted that motion to preclude, except that it granted the plaintiff permission to depose Harley and possibly disclose him as an expert after that deposition.

---

[6] This was the defendants' second attempt at moving for summary judgment in this case, and a motion was filed with the permission of the trial court, *Hiller, J.* Previously, in March, 2003, the trial court, *Hon. William B. Lewis*, judge trial referee, denied the defendants' initial motion for summary judgment concluding that there was a genuine issue of material fact as to whether the two year statute of limitations of § 52-584 was tolled under the continuing course of conduct doctrine because there were issues of fact about the underlying negligence in reading the April, 1996 MRI, the extent of Kotsoris' continuing relationship with the plaintiff, and the nature of the various business relationships between the defendants. Prior to that motion for summary judgment, the trial court, *Tierney, J.*, had denied the defendants' motion to strike, concluding that statute of limitations issues were more appropriately addressed via a motion for summary judgment.

Thereafter, to afford the plaintiff a full opportunity to prove the existence of continuing treatment or continuing course of conduct, Judge Tobin continued the pending motions for summary judgment until completion of Harley's deposition.

Subsequently, the trial court, *Hiller, J.*, granted the defendants' motions for summary judgment, concluding that there was no evidence that the defendants had engaged in a continuing course of conduct or treatment of the plaintiff that would toll the operation of the statute of limitations. Thereafter, Judge Tobin granted Kotsoris' motion to preclude expert testimony for failure to disclose an expert in accordance with Practice Book § 13-14, and the plaintiff withdrew the action against her. See also footnote 2 of this opinion. The trial court rendered judgment accordingly, and this appeal followed.

On appeal, the plaintiff claims that the trial court improperly granted the defendants' motions for summary judgment. Conceding that the statute of limitations has run with respect to her claims against Zimmerman, the plaintiff argues that there is a genuine issue of material fact precluding summary judgment in favor of the defendants because Harley's evaluation of the plaintiff's MRI in December, 1999, completed a continuing course of conduct by Associates and the hospital that, pursuant to this court's decisions in *Blanchette* v. *Barrett*, 229 Conn. 256, 640 A.2d 74 (1994), and *Witt* v. *St. Vincent's Medical Center*, 252 Conn. 363, 746 A.2d 753 (2000), tolled the statute of limitations until that time.[7] In response, the defendants rely on the Appellate Court's subsequent decision in *Golden* v. *Johnson Memorial Hospital, Inc.*, 66 Conn. App. 518,

---

[7] We note that the plaintiff does *not* claim that her treatment by Kotsoris, against whom the plaintiff has withdrawn her claim; see footnote 2 of this opinion; operated to apply the continuing course of conduct doctrine against Associates, members of which consulted with Kotsoris in 1996 and 1999.

785 A.2d 234, cert. denied, 259 Conn. 902, 789 A.2d 990 (2001), and a variety of sister state cases, to demonstrate that *Witt* and *Blanchette* are distinguishable because, in this context of multiple consultations by members of the same radiology practice group, each of the two MRI readings in the present case constituted a separate and discrete act, and there was no ongoing provider-patient relationship to toll the statute of limitations under the continuous treatment doctrine. We agree with the defendants.[8]

"As a preliminary matter, we set forth the appropriate standard of review. In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents

---

[8] The plaintiff also claims that the trial court, *Tobin, J.*, improperly granted Kotsoris' motion to preclude her expert from testifying at trial. Similar motions were filed by the other defendants. We find curious the plaintiff's briefing of this issue, which focuses on Kotsoris, who no longer is a party to this case; see footnote 2 of this opinion; and does not refer to the other defendants. Even if we were to accept the plaintiff's invitation, made at oral argument before this court, to consider her arguments as equally applicable to the defendants, our conclusion on the statute of limitations issue renders unnecessary any further consideration of the preclusion claim.

establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 46–47, 881 A.2d 194 (2005).

We begin our analysis by narrowing the issues in the present case, a process that starts with the plaintiff's concession that the statute of limitations has expired as to Zimmerman personally. Moreover, we assume that, for purposes of this appeal, Associates, which was Zimmerman's employer, functioned as the hospital's radiology department, and therefore, was its agent. We also assume, without deciding, that Associates and the hospital may be held vicariously liable for Zimmerman's negligence, notwithstanding the fact that any claims against her personally are time barred.[9] We, therefore,

---

[9] We note that whether a defendant may be held vicariously liable for the negligence of its employee when the direct claims against that employee are time barred is an issue of first impression that we need not resolve in this appeal. The plaintiff, relying on the line of cases holding that a child may bring a vicarious liability action against his parent's employer, notwithstanding the parent's lack of direct liability under the doctrine of parental immunity; see, e.g., *Begley* v. *Kohl & Madden Printing Ink Co.*, 157 Conn. 445, 449, 254 A.2d 907 (1969); claims that her vicarious liability claims against Associates and the hospital are not time barred, despite the expiration of the statute of limitations as to Zimmerman. In response, the hospital contends that, because a "principal's liability on the basis of an agency claim is entirely derivative of the conduct of its alleged agent, if . . . Zimmerman cannot be held liable, then neither can the hospital." The hospital relies on our decision in *Alvarez* v. *New Haven Register, Inc.*, 249 Conn. 709, 724, 735 A.2d 306 (1999), in which we held that, under the joint tortfeasor statute; General Statutes § 52-572e; "the plaintiff's release of an agent's liability extinguishes the principal's vicarious liability . . . ."

turn to an examination of the continuous treatment doctrine and the continuing course of conduct doctrine, to determine whether the statute of limitations was tolled as to Associates and the hospital, by virtue of

Neither party cites any other authority on this point, but our independent research indicates that our sister states are divided on this issue. Compare *Cohen* v. *Alliant Enterprises, Inc.*, 60 S.W.3d 536, 538 (Ky. 2001) (otherwise timely filed action against physician's employer not barred by expiration of statute of limitations as to physician not named in complaint), and *Juarez* v. *Nelson*, 133 N.M. 168, 178, 61 P.3d 877 (App. 2002) ("the dismissal of [the physician] based on a statute of limitations defense personal to qualified healthcare providers may not be asserted by [an employer not statutorily subject to a shorter malpractice limitations period] as a defense to vicarious liability for any acts of negligence committed by [the physician]"), overruled on other grounds by *Tomlinson* v. *George*, 138 N.M. 34, 116 P.3d 105 (2005), with *Stephens* v. *Petrino*, 350 Ark. 268, 279, 86 S.W.3d 836 (2002) (although claim against hospital was timely, claim against employee was untimely and "when an employee has been released or dismissed, and the employer has been sued solely on a theory of vicarious liability, any liability of the employer is likewise eliminated"), *Greco* v. *University of Delaware*, 619 A.2d 900, 904 (Del. 1993) ("[t]he result of the time bar to [the plaintiff's] claim for medical negligence against [the physician] is a failure of [the plaintiff's] vicarious claims on the theory of respondeat superior against [the physician's] employers, the University and the Student Health Center"), and *Hewett* v. *Kennebec Valley Mental Health Assn.*, 557 A.2d 622, 624 (Me. 1989) ("the Association's liability under [count two of the complaint] being vicarious to [the physician's] liability, the Association had available the same statute of limitations defense that was available to [the physician]"), *Lowery* v. *Statewide Health Care Service, Inc.*, 585 So. 2d 778, 779–80 (Miss. 1991) (expiration of health care malpractice statute of limitations as to allegedly negligent nurses applied to bar vicarious liability claim against nursing service), *Karaduman* v. *Newsday, Inc.*, 51 N.Y.2d 531, 546, 416 N.E.2d 557, 435 N.Y.S.2d 556 (1980) (libel action against employer time barred because its employees' "liability . . . was effectively extinguished when the [s]tatute of [l]imitations on plaintiff's cause of action . . . expired . . . any vicarious liability that [the employer] might have had in consequence of its employees' alleged misconduct must similarly be deemed extinguished"), and *Comer* v. *Risko*, 106 Ohio St. 3d 185, 191, 833 N.E.2d 712 (2005) (Despite filing timely action against the hospital, the medical malpractice statute of limitations as to the unnamed independent contractor physicians expired, "extinguishing their liability, if any. In the absence of the tortfeasor's primary liability, there is no liability that may flow through to the hospital on an agency theory."). Inasmuch as we conclude that neither tolling doctrine saves the plaintiff's cause of action against Associates and the hospital in the present case, we need not decide this question of first impression. Cf. *Sharsmith* v. *Hill*, 764 P.2d 667, 670 (Wyo. 1988) (continuing course of treatment doctrine applies to save both direct claims against physicians and vicarious liability claim against hospital).

the plaintiff's initial interaction with Zimmerman in 1996, and subsequent assessment by Harley in 1999.[10]

In the present case, § 52-584, which is the statute of limitations applicable to health care malpractice, requires actions to be brought "within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered," and also sets a repose period under which "no such action may be brought more than three years from the date of the act or omission complained of," which, in this case, was April 10, 1996. Under § 52-584, "the relevant date of the act or omission complained of . . . is the date when the negligent conduct of the defendant occurs and . . . not the date when the plaintiff first sustains damage. . . . In the medical malpractice context, we have specifically determined that a lawsuit commenced more than three years from the date of the negligent act or omission complained of is barred by the statute of limitations, § 52-584, regardless of whether the plaintiff had not or, in the exercise of care, could not reasonably have discovered the nature of the injuries within that time period. . . . We have also recognized, however, that the statute of limitations, in the proper circumstances, may be tolled under the continuous treatment or the continuing course of conduct doctrine, thereby allowing a plaintiff to commence

---

[10] See, e.g., General Statutes § 34-322 (1) ("Each partner is an agent of the partnership for the purpose of its business. An act of a partner, including the execution of an instrument in the partnership name, for apparently carrying on in the ordinary course the partnership business or business of the kind carried on by the partnership binds the partnership, unless the partner had no authority to act for the partnership in the particular matter and the person with whom the partner was dealing knew or had received a notification that the partner lacked authority."); General Statutes § 34-326 (a) (under Uniform Partnership Act, "partnership is liable for loss or injury caused to a person, or for a penalty incurred, as a result of a wrongful act or omission, or other actionable conduct, of a partner acting in the ordinary course of business of the partnership or with authority of the partnership").

his or her lawsuit at a later date."[11] (Citations omitted; internal quotation marks omitted.) *Blanchette* v. *Barrett*, supra, 229 Conn. 265.

Under the "modern formulation" of the continuing course of conduct doctrine, "[t]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . . Where we have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." (Internal quotation marks omitted.) Id., 275; see also *Witt* v. *St. Vincent's Medical Center*, supra, 252 Conn. 370 (continuing course of conduct doctrine requires plaintiff to prove that "defendant: [1] committed an initial wrong upon the plaintiff; [2] owed a continuing duty to the plaintiff that was related to the alleged original wrong; and [3] continually breached that duty").

Similarly, under the continuous treatment doctrine, "[t]he term malpractice itself may be applied to a single

---

[11] Application of both doctrines is "conspicuously fact-bound" and, although they are "analytically separate and distinct, their relevance to any particular set of circumstances, such as those involved in this appeal, may overlap." *Blanchette* v. *Barrett*, supra, 229 Conn. 276. "These doctrines share similar supporting rationales. The continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied. Similarly, [t]he policy underlying the continuous treatment doctrine seeks to maintain the physician/patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure." (Internal quotation marks omitted.) Id.

act of a physician or surgeon or, again, to a course of treatment. The [s]tatute of [l]imitations begins to run when the breach of duty occurs. When the injury is complete at the time of the act, the statutory period commences to run at that time. When, however, the injurious consequences arise from a course of treatment, the statute does not begin to run until the treatment is terminated."[12] (Internal quotation marks omitted.) *Blanchette* v. *Barrett*, supra, 229 Conn. 274.

In *Blanchette*, we concluded that there was sufficient evidence to toll the statute of limitations under either the continuing course of conduct doctrine or the continuous treatment doctrine, because the defendant, who had been the plaintiff's family physician from 1973 through 1985, first noticed an abnormal condition in the plaintiff's left breast in 1979, diagnosed it as fibrocystic disease, and never mentioned that diagnosis to her. Id., 266–67. The defendant continued to monitor that particular breast through 1983 and 1985, felt a lump in that area, and "conscious[ly]" did not advise the plaintiff to get a mammogram in 1983. Id., 267. In January, 1985, after the defendant sent the plaintiff for a mammogram that came back negative, the defendant did not do anything with respect to further monitoring of the condition or repeating the mammogram, and did not tell the plaintiff how to do breast self-examinations. Id., 267–68.

---

[12] Under the continuous treatment doctrine, treatment is not terminated "[s]o long as the relation of physician and patient continues as to the particular injury or malady which [the physician] is employed to cure, and the physician continues to attend and examine the patient in relation thereto, and there is something more to be done by the physician in order to effect a cure, it cannot be said that the treatment has ceased. That does not mean that there must be a formal discharge of the physician or any formal termination of his [or her] employment. If there is nothing more to be done by the physician as to the particular injury or malady which he [or she] was employed to treat or if he [or she] ceases to attend the patient therefor, the treatment ordinarily ceases without any formality." (Internal quotation marks omitted.) *Blanchette* v. *Barrett*, supra, 229 Conn. 274–75.

This court concluded that the jury properly relied on expert testimony at trial that the defendant should have engaged in extensive follow-up monitoring once he had diagnosed her with fibrocystic disease. Id., 270–71. We concluded that this evidence was "sufficient for the jury to find not only the existence of continuous treatment and a continuing duty on the part of the defendant with regard to the patient's breast condition, but also continuing negligence on the part of the defendant based upon a breach of his professional duty of care to the plaintiff." Id., 279. We noted expert testimony that, "the defendant had been negligent, not only by failing to perform or refer the plaintiff for immediate further diagnostic procedures after having received the negative results of the mammogram, but also by failing to pursue follow-up contacts with the plaintiff regarding her breast condition. According to [the expert witness], even if the defendant's original diagnosis of fibrocystic disease was not negligent, the absence of further monitoring of this breast condition was actionable since this later wrongful conduct continued until the plaintiff discovered her injury. It is this continuous failure to monitor . . . that requires the application of the continuous treatment doctrine and the continuing course of conduct doctrine, thereby tolling the running of the statute of limitations."[13] (Citation omitted.) Id., 279–80; see also *Sherwood* v. *Danbury Hospital*, 252 Conn. 193, 207–208, 746 A.2d 730 (2000) (genuine issue of fact existed precluding summary judgment as to continuous course of conduct doctrine when operative facts at time court considered statute of limitations issue indicated that other hospital blood banks had practice of informing all transfusion recipients that they had

[13] We did, however, ultimately reverse the judgment in *Blanchette*, concluding that the trial court had failed to instruct the jury properly as to the application of the continuing course of conduct doctrine. *Blanchette* v. *Barrett*, supra, 229 Conn. 284–85.

received blood untested for human immunodeficiency virus antibodies).

Subsequently, in *Witt* v. *St. Vincent's Medical Center*, supra, 252 Conn. 366, this court considered the applicability of the continuing course of conduct doctrine in the context of a physician employed by a hospital's pathology lab. In *Witt*, the defendant pathologist had reviewed tissue slides following a biopsy of the plaintiff's enlarged cervical lymph nodes in 1983. Id., 365. The defendant concluded that the slides were negative for cancer. Id. The plaintiff was diagnosed with non-Hodgkin's lymphoma eleven years later, and, at that time, his treating oncologist requested the original 1983 slides from the defendant. Id. The defendant sent the slides and report to the oncologist, and included a note that said, " 'I'd be interested in a follow up on this patient!! *I think at the time we were concerned* that [the plaintiff] might be evolving a small lymphocytic lymphoma/CCL.' " (Emphasis added.) Id.

This court concluded that there was a genuine issue of material fact precluding summary judgment because of the applicability of the continuing course of conduct doctrine, and rejected the defendant's argument that the three year statute of repose began to run in 1983. Id., 367. The court relied on the defendant's note to the oncologist as indicating a concern about cancer in 1983, which could have given "rise to the defendant's continuing duty to warn, which in turn triggered the continuing course of conduct doctrine." Id., 372. The court concluded that a jury reasonably could find a continuing breach of that duty, which was the defendant's "alleged continuing failure to indicate his concern for cancer throughout the period of time following the initial findings." Id., 373. The court further rejected the defendant's reliance on *Blanchette* v. *Barrett*, supra, 229 Conn. 284, for its determination that "a physician who has performed a misdiagnosis has [no] continuing duty to cor-

rect that diagnosis in the absence of proof that he subsequently learned that his diagnosis [had been] incorrect," and held that, "[t]he duty to correct a diagnosis that a physician subsequently learns was incorrect, as alleged in *Blanchette*, and the duty to correct a diagnosis that he had reason to question in the first instance . . . both implicate the continuing course of conduct doctrine." *Witt* v. *St. Vincent's Medical Center*, supra, 252 Conn. 375.

Finally, we find particularly instructive the Appellate Court's treatment of *Blanchette* and *Witt* in *Golden* v. *Johnson Memorial Hospital, Inc.*, supra, 66 Conn. App. 518. In that case, the plaintiff was hospitalized in March, 1986, for general malaise symptoms, at which time a lump was removed from his neck and tested by a pathologist. Id., 520. The pathologist was employed by a separate practice group that was affiliated with and provided all pathology services to the hospital. Id., 520 n.4. The pathologist reported that the lump was bacterial in origin, and the surgeon told the plaintiff that he was cured. Id., 520–21. Eleven years later, the plaintiff returned to the same hospital and underwent a battery of tests occasioned by a football injury, which ultimately revealed that he was suffering from Hodgkin's disease. Id., 521. At that time, the plaintiff told his oncologist about the lump that had been removed from his neck in 1986, and another pathologist employed by the hospital reviewed the 1986 tissue slides again. Id. Thereafter, that pathologist corrected the 1986 initial diagnosis to reflect cancer. Id.

The Appellate Court concluded that the plaintiff's action, filed six months after the issuance of the corrected report, was untimely because there was no continuing course of conduct to toll the operation of § 52-584. Id., 529–30. The Appellate Court stated that the "gravamen of the continuing course of conduct doctrine is that a duty continues after the original wrong is com-

mitted. Here, to prevail, the plaintiff had to show that [the pathology practice group] remained under a duty to him after the original misdiagnosis in 1986." Id., 525–26. The court rejected the plaintiff's claims that "the defendants owed a continuing duty to him from the time of the original misdiagnosis in 1986 until the issuance of the corrected report in 1998," and that "the pathologist's duty to the patient arises out of his examination of the patient's tissue, his analysis of that tissue, and his diagnosis resulting from that examination and analysis. The plaintiff further argue[d] that his reliance on [the pathologist's] diagnosis in the 1986 report and the fact that he did not consult with another physician because he was not provided follow-up treatment or given instructions on follow-up care shows that [the pathology group] had a continuing physician-patient relationship with him." Id., 526.

The Appellate Court distinguished our decisions in *Blanchette* and *Witt*, noting that, in *Witt*, the duty arose because of the defendant's initial, but unmentioned, concern about cancer, and in *Blanchette*, because of the defendant's continuing relationship with the plaintiff by virtue of his status as her family physician. Id., 528–29. The Appellate Court then concluded: "[A]s a matter of law, to expect a pathology group to provide follow-up treatment or to instruct a patient on follow-up care after a negative diagnosis when there is no awareness that the diagnosis is wrong and there is no ongoing relationship is beyond the expectation of public policy." Id., 529. The court stated that, "[t]o extend an initial duty to a pathologist to provide follow-up treatment or to instruct a patient on follow-up care when there is a negative diagnosis and no ongoing relationship would basically render the statute of limitations a nullity. That result would be against the policy of limiting the liability of defendants to claims brought within a reasonable time." Id., 530; see also *Hernandez* v. *Cirmo*, 67 Conn.

App. 565, 571–72, 787 A.2d 657 (no continuing duty or course of conduct when defendant surgeon was aware of scar tissue on plaintiff's fallopian tubes at time of surgery, but was not concerned at that time that condition would cause sterilization procedure to fail, "even if the plaintiff could have shown that such scarring should have caused such concern"), cert. denied, 259 Conn. 931, 793 A.2d 1084 (2002).

Cases cited by the defendants and located by our independent research indicate that the general rule, consistent with the Appellate Court's approach in *Golden* v. *Johnson Memorial Hospital, Inc.*, supra, 66 Conn. App. 518, is that separate and isolated contacts with different physicians who have the same employer, especially in the context of consultative practices such as radiology, will not, without more, give rise to a continuing course of conduct or treatment relationship for purposes of tolling the statute of limitations. We find several decisions of the New York Appellate Division particularly illustrative. In *Noack* v. *Symenow*, 132 App. Div. 2d 965, 966, 518 N.Y.S.2d 495 (1987), the court concluded that, "[t]he mere fact that on successive occasions [members of the defendant radiology group] compared prior bone scans with the current scan does not render treatment continuous. *A determination as to whether there is continuous treatment should be based upon whether there exists a relationship of continuing trust and confidence between the patient and the physician* . . . . A comparison of test results suggests adherence to appropriate diagnostic procedure, not a change in the level or nature of trust and confidence between patient and radiologist." (Citations omitted; emphasis added; internal quotation marks omitted.) The court further concluded that claims against a radiology group that was affiliated with a hospital were time barred when the group "maintains no contact with the patient aside from performance of the procedure and

taking a brief history from the patient. Records of its procedures are maintained by the hospital, and any diagnosis is imparted directly to a physician, not to the patient. Under these circumstances, the performance of each bone scan was complete and discrete and did not constitute continuing treatment . . . ." (Citations omitted.) Id. Similarly, in *Sweet* v. *Austin*, 226 App. Div. 2d 942, 943, 641 N.Y.S.2d 165, appeal denied, 88 N.Y.2d 811, 672 N.E.2d 604, 649 N.Y.S.2d 378 (1996), the court concluded that no continuing relationship existed when the defendant radiologist ruled out the presence of a brain tumor in 1987, and then diagnosed the plaintiff with a brain tumor after a 1991 computed tomography (CT) scan because that radiologist "and [the] plaintiff had no communication or contact beyond the interpretation of her 1987 and 1991 CT scans and had no contact during the time interval between the two CT scans." The court further noted that, "[t]he fact that the condition allegedly overlooked in the first CT scan was the condition ultimately diagnosed in the later CT scan does not bring the case within the continuing treatment doctrine 'even if a correct diagnosis would have led to an ongoing course of treatment.' " Id., 944; see also *Elkin* v. *Goodman*, 24 App. Div. 3d 717, 719, 808 N.Y.S.2d 405 (2005) ("although at least one radiologist at [practice group] reviewed prior MRIs when generating his MRI report, such conduct, standing alone, does not alter the fact that each MRI scan and [radiology] report was a complete and discrete service").[14]

---

[14] We note that decisions of other jurisdictions are in accord with the New York approach. See *Castillo* v. *Emergency Medicine Associates, P.A.*, 372 F.3d 643, 650 (4th Cir. 2004) ("[e]ven if Virginia law clearly allowed [the plaintiff] to reach [a corporate practice group] because of the continuing care of its physician-employees . . . the discrete and isolated nature of the emergency room contacts" between plaintiff and two different physicians more than one week apart, but for same ailment, when two did not consult about her care, did not constitute continuing care to toll statute of limitations); *Baker* v. *Radiology Associates*, 72 Ark. App. 193, 200–201, 35 S.W.3d 354 (2000) (continuing course of treatment doctrine inapplicable when radiology group consulted by plaintiff's gynecologist allegedly misread two

Viewed in light of these authorities, we conclude that the trial court properly determined that there is no genuine issue of material fact in the present case as to whether the statute of limitations was tolled by the continuing course of conduct doctrine or the continuous treatment doctrine. Even if we were to assume that an initial wrong occurred, or specifically, that Zimmerman was negligent in April, 1996, when she failed to diagnose the plaintiff's tumor and failed to consult with a neuroradiologist or other specialist more experienced in reading such MRIs, the plaintiff failed to "present evidence that demonstrates the existence of some disputed factual issue" in response to the defendants' motion. (Internal quotation marks omitted.) *Martel* v. *Metropolitan District Commission*, supra, 275 Conn. 46–47. On the record before us, this case is distinguishable from our decision in *Witt* v. *St. Vincent's Medical Center*, supra, 252 Conn. 363, because the plaintiff has not demonstrated that Zimmerman or anyone else affiliated with Associates or the hospital had any concern in 1996 that the MRI generated and read at that time indicated the presence of a tumor. This case also is distinguishable from *Blanchette* v. *Barrett*, supra, 229 Conn. 256, because, as was discussed previously, the plaintiff's two isolated contacts with Associates physicians over the course of three years constituted separate and discrete acts, unlike the close, long-term family physician relationship at issue in that case. Thus, the isolated nature of Associates' contacts with the plaintiff through Zimmerman and Harley bring this case within

annual screening mammograms because each reading was "separate and distinct" wrong in absence of any "indication that the radiologists were engaged in any active consultation with the gynecologist or in the ongoing treatment of [the plaintiff] for any specific condition"); cf. *Montgomery* v. *South County Radiologists*, 49 S.W.3d 191, 194–95 (Mo. 2001) (rejecting argument that each film reading was "discrete, intermittent service," and finding issue of material fact as to continuing duty of care when radiology group, at request of patient's physician, conducted three tests of patient's back in nine month period).

the ambit of *Golden* v. *Johnson Memorial Hospital, Inc.*, supra, 66 Conn. App. 518, and those sister state cases finding no continuous treatment relationship or continuing duty of care. Accordingly, the plaintiff's claims, brought in September, 2001, are time barred, and the trial court properly granted the defendants' motion for summary judgment.

The judgment is affirmed.

In this opinion the other justices concurred.