DOLLY ROMPREY ET AL. *v.* SAFECO
INSURANCE COMPANY
OF AMERICA
(AC 31962)

Beach, Bear and West, Js.

482

Argued January 3—officially released June 21, 2011

*Lisa J. Mainolfi*, for the appellants (plaintiffs).

*Andrew S. Turret*, with whom was *Cara D. Joyce*, for the appellee (defendant).

*Opinion*

BEAR, J. The plaintiffs, Dolly Romprey and Peter Romprey, appeal from the summary judgment rendered by the trial court in favor of the defendant, Safeco Insurance Company of America, in their action against the defendant for underinsured motorist benefits. On appeal, the plaintiffs claim that the trial court improperly granted the defendant's motion for summary judgment (1) after finding that the plaintiffs did not toll the three year statute of limitations period in accordance with General Statutes § 38a-336 (g) (1), (2) because the provisions of the applicable insurance policy are invalid and unenforceable, (3) because the defendant breached its contract with the plaintiffs, and (4) because the defendant is estopped from enforcing the terms of its policy. We affirm the judgment of the trial court.

The plaintiffs commenced this action on February 26, 2008.[1] The plaintiffs' complaint alleges the following. On November 16, 2004, Dolly Romprey was involved in a motor vehicle accident in which the vehicle she was driving collided with a vehicle driven by Donna Kempton. The collision was caused by Kempton's negligence. At the time of the accident, Dolly Romprey was insured under an automobile insurance policy issued by the defendant.

The plaintiffs sought to recover from the defendant under the uninsured/underinsured[2] motorist provisions of the automobile insurance policy issued by the defendant to the plaintiffs. In count one of the complaint, Dolly Romprey sought compensation for her own alleged injuries, and, in count two of the complaint, Peter Romprey sought compensation for loss of spousal consortium.

The defendant filed an answer and special defenses in which it asserted, inter alia, that the plaintiffs' cause of action was time barred pursuant to § 38a-336 (g) (1).[3]

---

[1] The plaintiffs claim that the action was commenced on February 15, 2008. The trial court found that the marshal's return indicates that process was served on the defendant on February 26, 2008, but "because the result of the present motion is the same regardless of which of the two dates is correct, the court need not resolve the conflict between the parties' statements and the marshal's return."

[2] The plaintiffs' complaint alleges that Dolly Romprey had insurance coverage from the defendant only under the uninsured motorist provisions of the policy. However, the relevant provision of the insurance policy contains references both to uninsured and underinsured motorist coverage. There is no dispute that the tortfeasor had insurance coverage on her motor vehicle, and the plaintiffs alleged in pleadings other than the complaint the payment to them of some or all of the tortfeasor's policy coverage amounts in a settlement. Thus, the plaintiffs' cause of action against the defendant must be based on the underinsured motorist coverage provided in the policy from the defendant. The trial court analyzed the plaintiffs' claims pursuant to such underinsured coverage. In this opinion, therefore, we also refer solely to the underinsured, and not to the uninsured, coverage provided in the policy.

[3] General Statutes § 38a-336 (g) (1) provides: "No insurance company doing business in this state may limit the time within which any suit may be brought against it or any demand for arbitration on a claim may be made

On September 24, 2008, the defendant filed a motion for summary judgment. The plaintiffs responded by objecting to the motion for summary judgment but, in the alternative, requested that the court compel arbitration in accordance with the policy of insurance. In support of their objection, the plaintiffs submitted two unauthenticated copies of letters to the defendant, which were signed by a paralegal from the office of the plaintiffs' attorney. The first letter, which is dated December 12, 2005, states: "In connection with the above referenced file, enclosed please find all reports and medical bills thus far. Please be advised that Ms. Romprey is having surgery and all other medical documentation will be forwarded upon receipt. Also, enclosed please find the Declaration page for Donna Kempton. Please be advised that we have exhausted Ms. Kempton's policy." The second letter, dated February 24, 2006, states: "Pursuant to Connecticut General Statute Section 38a-336 (g) (1), if applicable, consider this a formal demand for arbitration in the above-referenced matter. Furthermore, kindly provide this office with a copy of Ms. Romprey's automobile policy, which was in effect on the date of accident." The plaintiffs also submitted an unauthenticated document entitled "SETTLEMENT STATEMENT," which indicates that the plaintiffs received a $25,000 settlement from Kempton.

on the uninsured or underinsured motorist provisions of an automobile liability insurance policy to a period of less than three years from the date of accident, provided, in the case of an underinsured motorist claim the insured may toll any applicable limitation period (A) by notifying such insurer prior to the expiration of the applicable limitation period, in writing, of any claim which the insured may have for underinsured motorist benefits and (B) by commencing suit or demanding arbitration under the terms of the policy not more than one hundred eighty days from the date of exhaustion of the limits of liability under all automobile bodily injury liability bonds or automobile insurance policies applicable at the time of the accident by settlements or final judgments after any appeals."

On December 4, 2009, the court granted the defendant's motion for summary judgment. In the trial court, the defendant asserted that it was entitled to summary judgment because the plaintiffs did not commence their action within three years of the date of the accident as required by the policy. The plaintiffs responded in relevant part that (1) the defendant had notice of the plaintiffs' claim within the three year limitations period, (2) the plaintiffs tolled the three year limitations period by making a written demand for arbitration within 180 days of exhausting the limits of the tortfeasor's liability policy, (3) the defendant breached the insurance contract by failing to respond to the plaintiffs' demand for arbitration and by failing to provide the plaintiffs with a copy of their insurance policy, and, therefore, the three year contractual limitations period was inapplicable, and (4) there was a genuine issue of material fact as to whether the defendant advised the plaintiffs that the three year period applied.

With respect to the three year limitations period, the court determined that there was no genuine issue of fact that the plaintiffs commenced their action more than three years after the date of the accident. It found that the defendant was entitled to judgment as a matter of law unless there was evidence to support the application of the tolling provision. The court then stated that, under the plain language of the policy, the tolling provision applied only in the case of a claim involving an underinsured, as opposed to an uninsured, motor vehicle. It determined that for the plaintiffs to come within the policy's tolling provision, they must establish that the sum of the limits of all bodily injury liability policies applicable to Kempton's vehicle at the time of the accident was less than the limit of liability for the underinsured motorist coverage under their policy. The court noted that "[t]he plaintiffs have submitted an unauthenticated copy of a document entitled 'SETTLEMENT

STATEMENT,' which appears to indicate that the plaintiffs received a $25,000 settlement from Kempton. There is no indication, however, whether this amount was paid by an insurer or, if it was, whether it represents the full amount of Kempton's liability policy limits. Without any evidence indicating whether Kempton was insured and, if so, whether her bodily injury liability limits were less than $500,000,[4] it is impossible for the court to determine that the present claim is one 'involving an underinsured motor vehicle' and, in turn, that the policy's tolling provision applies." In a footnote, the court stated that "[t]he plaintiffs have submitted as their exhibit A an unauthenticated letter from a paralegal in their attorney's office indicating that 'we have exhausted Ms. Kempton's policy.' As an out-of-court statement, however, this constitutes hearsay inadmissible to prove that Kempton had an insurance policy or, if so, whether it was exhausted."

Although the court determined that the plaintiffs had not proven that their claim involved an underinsured vehicle, and therefore summary judgment in favor of the defendant should be granted, the court then "assume[d] that the present claim involve[d] an underinsured motor vehicle" and determined "that the plaintiff[s] ha[d] failed to submit evidence to establish that the two prongs of the tolling provision [had] been satisfied. As the language [of the plaintiffs' insurance policy] quoted [previously] indicates, in order to toll the three year limitations period, the plaintiffs would first have to have notified the defendant 'prior to expiration of the three year period, in writing, of any claim the [plaintiffs] may have for [u]nderinsured [m]otorists [c]overage.' " After analyzing this court's opinion in *Dorchinsky* v. *Windsor Ins. Co.*, 90 Conn. App. 557, 877 A.2d 821 (2005), the trial court concluded as to the first prong of the tolling

---

[4] Dolly Romprey's uninsured-underinsured motorist limit was $500,000 per person and per accident.

statute that "none of the documents submitted by the plaintiffs [made] any reference to an underinsured motorist claim, or any other information indicating what type of claim the claim number refers to. Like the plaintiff in *Dorchinsky*, therefore, the plaintiffs in the present action have failed to produce any evidence indicating that, within three years of the accident, they provided notice in writing of any claim for underinsured motorist coverage."

With respect to the second prong of the tolling provision, the court found that the documents offered by the plaintiffs did not establish that the settlement with Kempton exhausted the limits of her policy. "Accordingly, the plaintiffs have provided no evidentiary basis from which the court could conclude that a demand for arbitration was made within 180 days of exhaustion. Because the plaintiffs have failed to submit evidence indicating that they satisfied either prong of the policy's tolling provision or that Kempton's vehicle was underinsured, there is no basis for the court to conclude that the three year contractual limitations period was tolled."

Additionally, the court found that the plaintiffs did not provide evidentiary support for their argument that the defendant had breached the insurance contract by failing to respond to the plaintiffs' demand for arbitration and by failing to provide the plaintiffs with a copy of the insurance policy. The court further found that there was no genuine issue of material fact as to whether the defendant had advised the plaintiffs that the three year statute of limitations applied. Accordingly, the court rendered judgment in favor of the defendant. This appeal followed. Additional facts will be set forth as necessary.

"The standard of review of a trial court's decision to grant summary judgment is well established. [W]e must decide whether the trial court erred in determining that

there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Citation omitted; internal quotation marks omitted.) *Sherwood* v. *Danbury Hospital*, 252 Conn. 193, 201, 746 A.2d 730 (2000). "A material fact is a fact which will make a difference in the result of the case. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as a trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Internal quotation marks omitted.) *Coss* v. *Steward*, 126 Conn. App. 30, 40, 10 A.3d 539 (2011).

"The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . *and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Doty* v. *Mucci*, 238 Conn. 800, 805–806, 679 A.2d 945 (1996). "It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact . . . ." (Internal quotation marks omitted.) *Zielinski* v. *Kotsoris*, 279 Conn. 312, 319, 901 A.2d 1207 (2006). "Summary judgment may be granted where the claim is barred by the statute of limitations." *Doty* v. *Mucci*, supra, 806. "Our review of the trial court's decision to grant [a] motion for summary judgment is plenary."

(Internal quotation marks omitted.) *Bonington* v. *Westport*, 297 Conn. 297, 305, 999 A.2d 700 (2010).

In the present case, the relevant language of the insurance policy states: "All claims or suits under [the uninsured and underinsured motorist provisions] of this policy must be brought within three years of the date of the accident. However, in the case of a claim involving an *underinsured motor vehicle*, the insured may toll any applicable limitation period by:

"1. Notifying us prior to expiration of the three year period, in writing, of any claim *the insured* may have for Underinsured Motorists Coverage; and

"2. Commencing suit or arbitration proceedings not more than 180 days from the date of exhaustion of the limits of liability under all automobile bodily injury bonds or policies applicable at the time of the accident by settlements or final judgments after any appeals." (Emphasis in original.)

The motor vehicle accident involving Kempton and Dolly Romprey occurred on November 16, 2004, and this action was filed more than three years after the date of the accident. The plaintiffs had not commenced any arbitration proceedings.

I

The plaintiffs first claim that the court improperly granted the defendant's motion for summary judgment by finding that the plaintiffs had not tolled the three year statute of limitations period allowed by § 38a-336 (g) (1) and set forth in the policy. After reviewing the record in this case, we agree with the court that the plaintiffs did not demonstrate that the claim is one involving an underinsured motor vehicle.[5]

---

[5] Because we have determined that the plaintiffs have offered no competent evidence to establish that the claim is one involving an underinsured motor vehicle, we need not address whether the plaintiffs have submitted evidence to establish whether the two prongs of the tolling provision have been satisfied.

The plain language of the policy provides that any action for underinsured motorist benefits commenced more than three years after the underlying accident is time barred, unless the two tolling provisions are satisfied. Under the language of the policy, an "underinsured motor vehicle" is defined as "a land motor vehicle or trailer of any type for which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is less than the limit of liability for this coverage."

Therefore, in order for the policy's tolling provision to apply, the plaintiffs must first demonstrate that Kempton had an insurance policy with a certain coverage and that the limits of Kempton's coverage were exhausted by payment to the plaintiffs. "[E]xhaustion of the liability limits of the tortfeasor's policy is a necessary precondition to the recovery of underinsured motorist benefits . . . ." (Citations omitted.) *Serrano* v. *Aetna Ins. Co.*, 233 Conn. 437, 452, 664 A.2d 279 (1995). We agree with the trial court that the plaintiffs did not submit any competent evidence establishing that Kempton had an insurance policy, that it provided for coverage in a certain amount and that such coverage was exhausted by the settlement.

The "Settlement Statement" submitted by the plaintiffs, which was unauthenticated but which the trial court examined, does not specify whether the $25,000 paid to the plaintiffs was paid by Kempton's insurer and, if so, whether it represents the extent of Kempton's policy limits. Without evidence that Kempton had a policy that was exhausted by payment to the plaintiffs, it was impossible for the court to determine whether the plaintiffs' claims involved an underinsured motor vehicle. Therefore, it was impossible for the court to determine whether the plaintiffs raised a genuine issue of material fact about whether the contractual tolling

provisions were applicable and were satisfied by the plaintiffs.

Furthermore, in an effort to prove that Kempton was insured and her policy of insurance was exhausted, the plaintiffs cite the December 12, 2005 letter to the defendant from a paralegal in their attorney's office that states, in relevant part: "Please be advised that we have exhausted Ms. Kempton's policy." The court described this letter as "unauthenticated" and as "inadmissible" hearsay. The plaintiffs argue that the court's rejection of the letter was improper.

"[O]ur standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Hart*, 118 Conn. App. 763, 786, 986 A.2d 1058, cert. denied, 295 Conn. 908, 989 A.2d 604 (2010).

Practice Book § 17-45 provides in relevant part: "A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. . . ." "A party opposing a motion for summary judgment must provide an *evidentiary foundation* to demonstrate the existence of a genuine issue of material fact." (Emphasis in original.) *Barlow* v. *Palmer*, 96 Conn. App. 88, 92, 898 A.2d 835 (2006). "Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment." *Home Ins.*

*Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 202–203, 663 A.2d 1001 (1995).

"Practice Book § 380 [now § 17-45], although containing the phrase 'including but not limited to,' contemplates that supporting documents to a motion for summary judgment be made under oath or be otherwise reliable. Practice Book §§ 380 through 382 [now §§ 17-45 through 17-47] set forth detailed requirements to ensure that affidavits in support of summary judgment are proper. Those rules would be meaningless if they could be circumvented by filing unsworn letters written to an attorney for a party in support of or in opposition to summary judgment." *United Services Automobile Assn.* v. *Marburg*, 46 Conn. App. 99, 107–108, 698 A.2d 914 (1997).

Consequently, before a document may be considered by the court in support of a motion for summary judgment, "there must be a preliminary showing of [the document's] genuineness, i.e., that the proffered item of evidence is what its proponent claims it to be. The requirement of authentication applies to all types of evidence, including writings . . . ." Conn. Code Evid. § 9-1 (a), commentary. "Documents in support of or in opposition to a motion for summary judgment may be authenticated in a variety of ways, including, but not limited to, a certified copy of a document or the addition of an affidavit by a person with personal knowledge that the offered evidence is a true and accurate representation of what its proponent claims it to be." *New Haven* v. *Pantani*, 89 Conn. App. 675, 679, 874 A.2d 849 (2005).

Because our rules of practice and case law require, inter alia, that any opposition to a motion for summary judgment shall be based on authenticated documents and evidence provided in sworn affidavits, we cannot

agree with the plaintiffs that the court abused its discretion in rejecting the unauthenticated documents offered by the plaintiffs.[6] See *Barlow* v. *Palmer*, supra, 96 Conn. App. 92.[7] Without any competent evidence indicating that Kempton's policy had been exhausted and that the tolling provision of the policy was applicable, we decide that the court properly concluded that it was impossible to determine that the plaintiffs' claims involved an "underinsured motor vehicle" and, consequently, that the provision concerning notification of an underinsured motorist claim was tolled.[8]

## II

The plaintiffs argue that the defendant's policy of insurance does not conform to § 38a-336 (g) (1) and, therefore, is invalid. The plaintiffs further argue that,

---

[6] In *Barlow*, this court stated that unsworn deposition testimony "could have been admitted at trial without objection to create an evidentiary foundation for the determination that a genuine issue of material fact exists, particularly where, as here, both parties submitted uncertified deposition transcripts. Therefore, a court properly could consider such a submission without objection." *Barlow* v. *Palmer*, supra, 96 Conn. App. 92. The plaintiffs cite this case for the proposition that a court *may* consider unauthenticated evidence in ruling on a motion for summary judgment. This court, however, ultimately affirmed the trial court's granting of the motion for summary judgment, stating that "we are reluctant to find that the trial court incorrectly insisted on certified transcripts to support an evidentiary finding when the rule provides that such documentation shall be supplied." Id. The plaintiffs have not cited any authority suggesting that a failure of a trial court to consider unauthenticated evidence constitutes an abuse of discretion.

[7] We note that in *DiPietro* v. *Farmington Sports Arena, LLC*, 123 Conn. App. 583, 2 A.3d 963, cert. granted, 299 Conn. 920, 10 A.3d 1053 (2010), this court concluded that, in the course of a summary judgment proceeding, plenary review applies to a trial court's ruling concerning the admissibility of expert testimony. Id., 610–12. Following our decision, the defendants in that case requested and were granted certification to appeal to our Supreme Court on that issue. See *DiPietro* v. *Farmington Sports Arena, LLC*, 299 Conn. 920, 10 A.3d 1053 (2010).

[8] Additionally, the plaintiffs did not demonstrate the existence of any genuine issue of material fact about whether suit or arbitration proceedings were commenced not more than 180 days after the alleged exhaustion of Kempton's coverage and that they had satisfied the second tolling provision.

because the policy is invalid, the applicable statute of limitations period is six years as prescribed by General Statutes § 52-576.[9] We are not persuaded.

As permitted by § 38a-336 (g) (1), the plain language of the policy provides that any action for underinsured motorist benefits commenced more than three years after the underlying accident is time barred, unless the accident involves an underinsured motor vehicle and the tolling provisions are satisfied.

The plaintiffs contest the validity of the second prong of the policy's tolling provision. The plaintiffs note that the defendant's policy requires that a plaintiff must *commence suit or arbitration proceedings* not more than 180 days from the date of exhaustion, whereas § 38a-336 (g) (1) requires that a plaintiff must *commence suit or demand arbitration* under the terms of the policy not more than 180 days from the date of exhaustion. The plaintiffs argue that the policy requirement that an underinsured policyholder must "commence arbitration" is invalid because it is more restrictive than the provision in § 38a-336 (g) (1) that an underinsured policyholder may toll any applicable limitations period "by commencing suit or demanding arbitration under the terms of the policy . . . ." They further argue that because the contract provision is invalid, the three year limitation period that they failed to satisfy is not applicable, and the general contract six year limitation period thus applies to their claims. See *Tracy* v. *Allstate Ins. Co.*, 76 Conn. App. 329, 336, 819 A.2d 859 (2003), aff'd, 268 Conn. 281, 842 A.2d 1123 (2004). We are not persuaded by this argument, however, because, as we explained in part I of this opinion, the plaintiffs failed to present any competent evidence to establish that

[9] General Statutes § 52-576 (a) provides in relevant part: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . . ."

Kempton had a policy, that the policy limits existed in a specific amount, that the settlement exhausted that coverage and, therefore, that the claim was one involving an underinsured motor vehicle. Because the plaintiffs have failed to establish this threshold requirement, the tolling provision of the policy has not been implicated, and we need not address its validity or whether the plaintiffs properly demanded arbitration.

### III

The plaintiffs additionally argue that the defendant breached its contract with the plaintiffs by failing to respond to the plaintiffs' initial demand for arbitration and by failing to provide the plaintiffs' counsel with a copy of the insurance policy. The plaintiffs assert that, because of the breach, the three year contractual limitations period is inapplicable and the six year limitations period set forth in § 52-576 applies. We disagree.

First, we note, as did the trial court, that nowhere in the policy is there any provision that a six year limitations period shall apply if the defendant fails to respond to a demand for arbitration or to provide a copy of the applicable insurance policy. Second, the plaintiffs offered only assertions of fact to support their argument that the defendant failed to respond to their demand for arbitration and request for a copy of the policy. To support these assertions, the plaintiffs offered the unauthenticated February 24, 2006 letter to the defendant from a paralegal in the office of the plaintiffs' attorney. While it is true that, in considering a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party, without competent evidence to support the claims, however, the plaintiffs had not raised a genuine issue of material fact. See *Zielinski* v. *Kotsoris*, supra, 279 Conn. 319. "To establish the existence of a material fact, it is not enough for the party opposing summary

judgment merely to assert the existence of a disputed issue. . . . Such assertions are insufficient regardless of whether they are contained in a complaint or a brief." (Citations omitted.) *Trotta* v. *Branford*, 26 Conn. App. 407, 412, 601 A.2d 1036 (1992). The plaintiffs did not submit any sworn affidavits or certified or otherwise authenticated documents to establish any genuine issue of material fact. Accordingly, the court properly concluded that there was no evidentiary basis to support the argument that the defendant breached its contract with the plaintiffs.

## IV

Finally, the plaintiffs argue that there is a genuine issue of material fact as to whether the defendant should be estopped from raising the defense of the time limit on suit in the policy because, on the basis of the defendant's conduct, the plaintiffs reasonably believed that the defendant had waived its right to rely on that provision. We are not persuaded.

"Estoppel has its roots in equity and stems from the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse. . . . The modern estoppel in pais is of equitable origin, though of equal application in courts of law. It is much more than a rule of evidence. It establishes rights; it determines remedies. An equitable estoppel does not so much shut out the truth as let in the truth, and the whole truth. Its office is . . . to show what equity and good conscience require, under the particular circumstances of the case . . . ."

"It would be unjust to foreclose an insured's ability to assert an estoppel theory because the insured has not obtained a written waiver when other actions of

the insurance carrier lead the insured reasonably to believe that the statutory limitation on suit provision or any other provision of an insurance policy will not be enforced." (Citations omitted; internal quotation marks omitted.) *Boyce* v. *Allstate Ins. Co.*, 236 Conn. 375, 383–84, 673 A.2d 77 (1996).

"[E]stoppel always requires proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . . Moreover, it is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." (Citations omitted; internal quotation marks omitted.) Id., 385–86.

As an exhibit to the plaintiffs' supplemental objection to the defendant's motion for summary judgment on August 7, 2009, the plaintiffs submitted an affidavit of their attorney, stating that, in 2007, she made numerous attempts to contact the insurance adjuster assigned to handle the case. She further averred that she spoke with the insurance adjuster in December, 2007, when she was not advised that the claim was being denied "for failure to prosecute according to the policy, but value was in dispute."

We conclude that the mere fact that the plaintiffs' counsel spoke with the insurance adjuster following the expiration of the three year limitations period[10] and was not advised that the claim would be denied is insufficient to sustain a claim of estoppel, as "silence will

[10] The accident occurred on November 16, 2004, and the plaintiffs' counsel avers that she spoke with the insurance adjuster in December, 2007.

not operate as [an] estoppel absent a duty to speak." (Internal quotation marks omitted.) *Boyce* v. *Allstate Ins. Co.*, supra, 236 Conn. 387. Viewing the evidence in the light most favorable to the plaintiffs, we conclude that the plaintiffs failed to offer any evidence to demonstrate any misleading conduct by the defendant within the limitations period on which the plaintiffs reasonably could have relied to support their belief that the limitations provision would not be enforced. Furthermore, the plaintiffs have offered no evidence that they changed their position in reliance on those facts, thereby incurring some injury.

The judgment is affirmed.

In this opinion the other judges concurred.